2016 PA Super 241

| | |
|---|---|
| J. DOUGLAS FARRELL, ADMINISTRATOR OF THE ESTATE OF LOUIS J. FARRELL, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT T. REGOLA, III AND JANETTE A. REGOLA, HIS WIFE, AND ROBERT T. REGOLA, IV | |
| Appellants | No. 566 WDA 2015 |

Appeal from the Order March 11, 2015
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 7977 of 2008

BEFORE:  BOWES, MUNDY, AND JENKINS, JJ.

OPINION BY BOWES, J.:                    **FILED NOVEMBER 08, 2016**

Robert T. Regola, III, his wife Janette A. Regola, and their son Robert T. Regola IV ("Bobby") (collectively "the Regolas") appeal from a March 11, 2015 discovery order.  They aver that the order in question requires the production of materials that are protected by privilege.  We agree with their contentions and reverse.

On July 18, 2008, Appellee J. Douglas Farrell, as administrator of the Estate of Louis J. Farrell, deceased, instituted this wrongful death and survival action on behalf of himself and other unnamed heirs by writ of summons.  After being ruled to do so, Mr. Farrell filed a complaint on December 1, 2008.  He averred that the Regolas' negligence was the

proximate cause of the death of his son Louis at the age of fourteen. The averments in the complaint were as follows. In December 2003, Mr. Regola purchased a Taurus-9 millimeter handgun that he kept in his house in an unlocked black plastic case with a loaded clip next to it. Bobby, a minor when the gun was purchased, had access to the weapon, and Mr. and Mrs. Regola were aware that he handled the gun on numerous occasions without supervision. Bobby showed the weapon to other minors, including Louis.

The allegations leveled in the complaint continued. On July 21, 2006, Mr. and Mrs. Regola left their home for an overnight visit and asked Louis, who lived next door, to care for their two dogs. Bobby, then sixteen years old, was permitted to stay at home, and, on the morning of July 21, 2006, he went to a local amusement park with his girlfriend. That day, Louis attended to the dogs. At approximately 10:30 p.m., Bobby returned home and telephoned his father to inform him that he was safely there. Approximately twenty minutes later, Bobby telephoned his father again and told him that the Taurus gun and ammunition were missing.

Mr. Farrell also averred that at 11:00 p.m., Louis called Bobby, and they arranged to smoke a cigar together outside. Several minutes later, they met in a wooded area outside the Regola residence and smoked the cigar. Louis was in possession of Mr. Regola's missing weapon. At 11:20 p.m., Mr. Regola called his brother, Ronald, and asked him to check on Bobby. Ronald, who lived nearby, arrived at the Regola residence soon

thereafter. He and Bobby searched the house for the missing handgun and ammunition, but failed to find it. Ronald telephoned Mr. Regola at about 11:50 p.m., informed him that the gun had not been located, and then left the Regola residence at about 12:05 a.m. At approximately 8:40 a.m. on July 22, 2006, Mr. Farrell found Louis' body in the wooded area with a single, fatal gunshot wound to the head. Mr. Regola's gun was next to Louis. Mr. Farrell asserted that the Regolas were subject to liability for Louis' suicide based upon their negligent actions with respect to the gun in the home.

In their answer and new matter, the Regolas denied that the gun was always kept in their house, that Bobby had access to the gun, and that he showed it to other minors. The Regolas also presented a different version of the events of July 21, 2006, as follows. After Bobby and Mr. Regola became aware that the gun was not in the case when Bobby returned from the amusement park, they discussed the matter and concluded that the weapon was in the possession of Mr. Regola's sister at her lake house. Bobby did not smoke a cigar with Louis that night and, in fact, never was in Louis' company at any time on July 21, 2006. When Louis and Bobby spoke on the telephone at approximately 11:00 p.m., Bobby asked Louis if he had gone upstairs where the gun was kept, and Louis responded that he had not. Ronald went to the Regola home solely to check on Bobby, and neither Ronald nor Bobby searched for the gun that night.

In their new matter, the Regolas averred that Louis had taken the gun without their knowledge and permission and that he was allowed inside their home solely for the purpose of caring for their dogs. Additionally, the autopsy report indicated that Louis died of a single gunshot to the head, and the Pennsylvania State Police conducted an investigation into the death. They performed DNA analysis on the Taurus gun found near to the body, finding that Louis' DNA matched the DNA found on the grip of the gun and no DNA from Bobby was on that weapon. The police tested Bobby's hands and found no gunshot residue on them and also found no proof that anyone was with Louis at the time of his demise. The Office of the Coroner of Westmoreland County ruled that Louis' death was a suicide.

The record herein indicates that Mr. Regola faced criminal charges in connection with the events surrounding Louis' death. Our review of the public docket sheet pertaining to Mr. Regola's prosecution establishes that he was represented by Charles J. Porter, Esquire, and was charged with permitting a minor to possess a gun, reckless endangerment, and, in connection with his testimony at the coroner's inquest, perjury and false swearing. In 2008, a jury acquitted Mr. Regola of all charges.

The present civil matter proceeded to discovery. Mr. Farrell propounded interrogatories and requests for production of documents upon the Regolas. The Regolas refused to respond to interrogatory number forty-nine, which consisted of the following:

49. Did you seek and/or obtain any type of medical care or treatment, including but not limited to mental health care and treatment, as a consequence of and/or in any way related to the events that took place on July 21, 2006 through July 22, 2006 and for which this lawsuit has been brought? This Interrogatory includes but is not limited to medical care or treatment you sought or obtained from your family physician as well as any type of psychiatric care or treatment, psychological counseling and treatment and/or family counseling. If so, please provide the following information:

(a) Name and address of person and facility from which treatment was sought and/or obtained;

(b) Dates upon which treatment was sought and/or provided;

(c) Description of the treatment sought and /or provided; and

(d) Reason for seeking and/or obtaining the treatment.

Sub-paragraph (e) of Interrogatory No. 49 requested copies of records from each provider identified.

Motion to Compel, 5/30/14, at 2. They maintained that this interrogatory was not reasonably calculated to lead to the discovery of admissible evidence. In addition, the Regolas objected to the request that they produce documents identified in paragraphs eleven, twelve, and thirteen of Mr. Farrell's request for production of documents. In those paragraphs, Mr. Farrell sought information about Mr. Regola's criminal trial, including Mr. Regola's handwritten notes.

Mr. Farrell filed a motion to compel answers to the interrogatories and requests for production of documents. In that motion, Mr. Farrell pointed to Mrs. Regola's deposition testimony that she sought counseling after the incident, but could not recall the providers she consulted eight years earlier, as the basis for compelling her to answer this interrogatory. *Id*. at 3.

In his order dated March 10, 2014, the Honorable Gary P. Caruso, who retired shortly thereafter, granted Mr. Farrell's motion to compel answers to interrogatories and request for production of documents. The order stated in relevant part:

> 1. The Motion to Compel a response to Interrogatory 49 and Document Request is granted to the extent that the defendant, Janette Regola, shall respond to Interrogatory 49 (a), (b), (c) and (d). In this regard, **it is further Ordered that the defendant, Janette Regola, conduct further and more extensive investigation to determine the name and occupation of the provider of any counseling or mental health treatment required in connection with this matter**. This investigation shall include, but not be limited to, obtaining insurance documentation that would reveal the name of such providers; and also an examination of checking account statements to determine if any such providers are listed as payee. The plaintiff shall thereafter report to the court within 20 days of the receipt of this Order setting forth the efforts undertaken to determine the information requested by Interrogatory No. 49 (a), (b), (c) and (d). **With regard to Interrogatory No. 49 (e) and Request for Production No. 13, as they pertain to Janette Regola, a ruling on the Motion to Compel production of this requested information will await the responses to Interrogatory No. 49 (a),(b), (c) and (d)**.
>
> . . . .

> 3. With regard to the Motion to Compel production of documents requested by the Plaintiffs' Document Request Nos. 11, 12, and 13, directed to the Defendant, Robert Regola, III, specifically all notes taken by said Defendant at his criminal trial and/or any depositions in this matter, **the Defendants shall produce the requested documentation; or in the alternative the counsel for the defendant shall prepare a privilege log for inspection by Plaintiffs' counsel and the court**.

Order of Court, 3/10/14, at 1-2 (emphases added).

Thus, the order did not require disclosure of the requested records. Instead, it compelled Mrs. Regola to reveal the name of her mental health provider and indicated that a ruling on whether the Regolas had to answer interrogatory number forty-nine would follow. Similarly, the order makes clear that Mr. Regola did not have to release any notes so long as he established that they were subject to the attorney-client privilege.

Even though paragraphs eleven, twelve, and thirteen of the request for production of documents were limited to matters pertaining to Mr. Regola's criminal trial, the March 10, 2014 order also discussed whether Mr. Regola had to produce notes that he took during civil depositions conducted in this lawsuit. The parties herein indicate that a hearing was held on the motion to compel that resulted in the issuance of the March 10, 2014 order. We surmise that the question concerning Mr. Regola's note-taking in this matter arose at the hearing.

The Regolas complied with the March 10, 2014 order by writing a letter to Judge Caruso outlining that Mrs. Regola searched her health records, which revealed that on May 19, 2007, June 13, 2007 and June 19, 2007, she sought mental health treatment at Kreinbrook Psychological Services. That organization employed Dr. Dennis Kreinbrook, a licensed psychologist. Defendants' Reply to Plaintiff's Motion to Compel Defendants to Comply with the March 10, 2014 Discovery Order, 6/11/14, at Exhibit 3. In the letter, the Regolas indicated that Mrs. Regola saw Dr. Kreinbrook on May 18, 2007, and a licensed clinical social worker on June 13, 2007, and June 19, 2007. In the same letter, the Regolas invoked the psychologist/patient privilege as to the records of her treatment at Kreinbrook Psychological Services.

On April 8, 2014, as required by the March 10, 2014 order, Appellant filed a privilege log with respect to Mr. Regola's notes. The log described the privileged document as handwritten notes taken by Mr. Regola during depositions taken herein on January 20, 21, and 22, 2014, and the privilege asserted was attorney-client. The log stated that the "notes were taken pursuant to advice of counsel and were provided to counsel only. The notes generally contain questions and observations Mr. Regola shared with his counsel." Privilege Log, 4/8/14, at 1.

With respect to the notes taken during the criminal trial, Mr. Regola submitted a supplemental response to Mr. Farrell's demand that he produce

them. That response was a letter from Mr. Regola's counsel during his criminal trial, Mr. Porter, who said that he was "in possession of notes taken by Mr. Regola during the course of my representation of him on the criminal charges that were brought against him." Motion to Compel, 5/30/14, at Exhibit F (Letter from Charles J. Porter, 4/7/14, at 1.) Mr. Porter continued that it was his standard practice to "advise clients to take notes and provide me with those notes" and that the notes "squarely fall within the attorney/client privilege." *Id*. He refused to supply Mr. Regola's notes.

On May 30, 2014, Mr. Farrell presented another motion to compel compliance with the March 10, 2014 discovery order. The Honorable Anthony G. Marsili, who had been assigned this matter following Judge Caruso's retirement, resolved this motion. Mr. Farrell complained that Mrs. Regola had refused to supply the records of the medical or psychiatric treatment she obtained after the incident. Specifically, Mr. Farrell demanded to see any **statements** that Mrs. Regola made during counseling about the events surrounding the subject matter of this lawsuit.

Mr. Farrell also disputed that the attorney-client privilege was applicable to the notes that Mr. Regola took during the depositions. Mr. Farrell relied upon the fact that, during his deposition, Mr. Regola said that he did not know why he was taking the notes, and, when asked what he would do with them, Mr. Regola responded, "Probably nothing." Motion to Compel, 5/30/14, at Exhibit K (Deposition Transcript of Robert Regola III, at

103). Mr. Farrell acknowledged that he attempted to take possession of Mr. Regola's notes after each of the three depositions and that "[c]ounsel for Defendant Regola III stated that Defendant had taken the notes at counsel's request and that the notes would not be produced[.]" Motion to Compel, 5/30/14, at 8.

In response to Mr. Farrell's May 30, 2014 motion to compel, a June 11, 2014 order was entered. Judge Marsili ordered Mr. Regola to waive his attorney-client privilege with Mr. Porter and obtain the notes in Mr. Porter's possession. Judge Marsili also gave the Regolas two options: to either produce all of Mrs. Regola's medical records from Kreinbrook Psychological Services as well as all of Mr. Regola's notes or produce a "specific detailed privilege log identifying [medical records] that are being withheld" and "identifying the notes that are being withheld." Order of Court, 6/11/14, at 2.

Mrs. Regola, in compliance with the June 11, 2014 order, obtained all of her treatment records from Kreinbrook Psychological Services. She then filed two detailed privilege logs setting forth the dates and nature of the documents that she received. The first privilege log pertained to materials authored by Kreinbrook Psychological Services and included notes from a May 19, 2007 clinical interview and June 1, 2007 progress notes. Mrs. Regola asserted that the materials were privileged under the psychiatrist/psychologist-patient privilege. The second privilege log

contained documents authored by Mark R. Jones, a licensed clinical social worker, on June 19, 2007, and June 13, 2007, and July 7, 2014. The documents in question included notes from a treatment session, a letter to Mr. Regola's primary care physician discussing information that Mrs. Regola gave Mr. Jones during their treatment session, an evaluation containing information provided by Mrs. Regola during the session, and a letter transmitting Mrs. Regola's records to her.  Mrs. Regola asserted that the materials authored by Mr. Jones were privileged under the psychiatrist/psychologist-patient privilege.

Mr. Regola complied with the June 11, 2014 order by filing a supplemental privilege log about the notes that he took during the depositions conducted in the instant case.  He took handwritten notes during the depositions of Mrs. Regola, Bobby, Mr. Farrell, and Lauren Farrell.  In the log, the Regolas asserted that the attorney-client privilege had not been waived and applied to these notes, explaining that "Mr. Regola is a client of Attorney [Arthur J.] Leonard, who represents the Regolas in this lawsuit." Supplemental Privilege Log Regarding Notes Taken by Robert T. Regola, III During the Depositions of January 20-22, 2014, 7/11/14, at 1-2.  The log continued that the "notes were communicated to Attorney Leonard only," that they "relate to the deposition" in question, and that the notes "were communicated to Attorney Leonard for the purpose of securing assistance in this ongoing legal matter." *Id*.

Additionally, Mr. Regola obeyed the June 11, 2014 order by obtaining the notes held by Mr. Porter and giving them to Mr. Leonard. There were five sets of handwritten notes, all prepared by either Mr. Regola or Mr. Porter "in anticipation of criminal trial." Privilege Log Regarding Notes Taken By Robert T. Regola, III During The Course Of The Criminal Matter, 8/11/14, at 1-2. The privilege asserted was the attorney-client privilege, which the Regolas stated had not been waived. They delineated that Mr. Regola was the client of Mr. Porter and Mr. Leonard, and that the notes were communicated only to those two attorneys. Furthermore, "Mr. Regola's notes were taken at the direction of Attorney Porter and were made in the course of Attorney Porter's representation of Mr. Regola in his criminal case for the purpose of securing legal assistance in that matter." *Id*. The Regolas continued that Mr. Porter's notes contained his legal impressions conclusions, opinions, and other protected material.

On January 9, 2015, Mr. Farrell filed a motion to compel. Mr. Farrell asserted a total right to the entire contents of all the documents in question, or, in the alternative, demanded *in camera* review. Mr. Farrell again specifically sought any communications that Mrs. Regola made during therapy or that Mr. Regola made to his attorneys so the extent the communication was about the events at issue in this lawsuit. After the Regolas filed their response, the trial court issued the following order:

1. Defendants are hereby DIRECTED to submit to the Court, on or before Friday, April 17, 2015:

   a) any and all of Defendant Janette Regola's psychiatric records from mental health visits conducted pursuant to the incident in question;

   b) and, any and all of Defendant Robert Regola III's handwritten notes taken during the civil depositions and during his criminal trial.

The Court will perform said *in camera* review thereafter.

2a. **The Court** notes that during said *in camera* review it **will look for specific historical statements in the mental health records made by Defendant Janette Regola regarding the incident giving rise to this case**.

2b. As a result of Plaintiff not specifically identifying the information requested in the Court's review of Defendant Robert Regola, III's handwritten notes taken during the civil depositions and during his criminal trial, **the Court** in its *in camera* review **will look for relevant evidence and statements regarding the incident giving rise to this case**.

Order of Court, 3/11/15, at 4 (emphases added).

Appellants filed this appeal from the March 11, 2015 order, claiming that the materials in question are absolutely privileged and not subject to *in camera* review. They assert the psychologist-patient privilege in connection with Mrs. Regola's counseling sessions and the attorney-client privilege as to all the notes taken by Mr. Regola. Specifically, Appellant raises three issues for our review:

I.   Whether the trial court erred in ordering the production of privileged mental health records, for an *in camera* review, when Janette Regola's psychiatric records are clearly subject to the psychiatric/psychologist relationship as defined under Pa.R.C.P.

- 13 -

Rule 4003.1(a); 42 Pa.C.S.A. § 5944, and ***Carrie Jaffee, Special Administrator for Ricky Allen, Sr., deceased v. Mary Lu Redman, et al.***, 518 U.S. 1 (1996).

II.   Whether the trial court erred in ordering the production of privileged attorney-client protected information, as defined by Pa.R.C.P. Rule 4003.1(a); 42 Pa.C.S. § 5928; and 42 Pa.C.S. § 5916, for an *in camera* review, when Mr. Regola's III's notes were taken at the behest of his attorneys and during litigation proceedings.

III.   These errors are immediately appealable under Pennsylvania Rule of Appellate Procedure 313.

Appellant's brief at 5.

Since it implicates our jurisdiction, we first address the third issue presented herein. As a general rule, this Court has jurisdiction over appeals taken from final orders only. ***Angelichio v. Myers***, 110 A.3d 1046, 1048 (Pa.Super. 2015); ***see*** Pa.R.A.P. 341. The Regolas maintain that we have jurisdiction over this appeal pursuant to Pa.R.A.P. 313, which embodies the collateral order doctrine and states

(a)   General Rule. An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

(b)   Definition. A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

Mr. Farrell has devoted nearly his entire brief to the position that the March 11, 2015 order is not appealable in that it requires only *in camera*

- 14 -

review and the Regolas' privilege assertions were too vague. Appellee's brief at 7-11. Mr. Farrell insists that the asserted privileges will not be irretrievably lost since only *in camera* review was permitted. Mr. Farrell's position is inconsistent with the pertinent law. The courts of Pennsylvania have uniformly held that, if an appellant asserts that the trial court has ordered him to produce materials that are privileged, then Rule 313 applies. Recently, in **Yocabet v. UPMC Presbyterian**, 119 A.3d 1012 (Pa.Super. 2015), this Court addressed two pretrial appeals of discovery orders entered in a medical malpractice case. The appellant invoked the peer-review and attorney-client privileges as to the materials that the trial courts ruled were discoverable by the opposing party. We concluded that we had jurisdiction, stating, "When a party is ordered to produce materials **purportedly** subject to a privilege, we have jurisdiction under Pa.R.A.P. 313[.]" **Id**. at 1016 n. 1 (emphasis added).

The ability to immediately appeal orders requiring the divulgence of materials alleged covered by a privilege derives from **Ben v. Schwartz**, 729 A.2d 547 (Pa. 1999). Therein, our Supreme Court held that, when a trial court refuses to apply a claimed privilege, the decision is appealable as a collateral order. In **Commonwealth v. Harris,** 32 A.3d 243 (Pa. 2011), the Court ruled that this precept survived **Mohawk Industries, Inc. v. Carpenter**, 558 U.S. 100 (2009), wherein the United States Supreme Court elected to disallow such appeals in the federal system. The **Harris** Court re-

affirmed that "orders overruling claims of privilege and requiring disclosure are immediately appealable under Pa.R.A.P. 313." *Harris*, *supra* at 248.

If materials are privileged, no one, not even a trial judge, may have access to them. *Commonwealth v. Kyle*, 533 A.2d 120, 129 (Pa.Super. 1987) (holding that the defendant was "not entitled to examine the victim's post-assault psychotherapy records or to have the trial court review such records *in camera* on the basis that the records might possibly reveal statements of fact that differ from the anticipated testimony of the victim at trial); *accord Commonwealth v. Simmons*, 719 A.2d 336 (Pa.Super. 1998) (records that are privileged under psychiatrist/psychologist-patient privilege are not subject to *in camera* review by the trial court); *see also Commonwealth v. Berger*, 96 A.3d 1049 (Pa. 2014 (examining propriety of order that required *in camera* review of materials that were purportedly subject to a privilege).

Even more egregious herein is the fact that the trial court clearly indicated that it intended to disseminate to Mr. Farrell anything said by the Regolas if their communications related to the events surrounding his son's death. If the communications in question are privileged, any dissemination of their contents to Mr. Farrell would violate the applicable privilege. The order sets forth the court's intent to give Mr. Farrell information in which the Regolas assert established and honored privileges. It is unquestionably immediately appealable.

Having determined that we have jurisdiction over this appeal, we now examine the appropriate standard of review. Herein, we are tasked with reviewing whether the psychiatrist/psychologist-patient privilege applies to Mrs. Regola's counseling sessions at Kreinbrook Psychological Services, including her sessions with the psychologist and clinical social worker,[1] and

---

[1] We observe that a clinical social worker is defined as follows by the American Board of Examiners in Clinical Social Work:

> Clinical social work is a healthcare profession based on theories and methods of prevention and treatment in providing mental-health/healthcare services, with special focus on behavioral and bio-psychosocial problems and disorders. Clinical social work's unique attributes include use of the person-in-environment perspective, respect for the primacy of client rights, and strong therapeutic alliance between client and practitioner. With 250,000 practitioners serving millions of client consumers, clinical social workers constitute the largest group of mental-health/healthcare providers in the nation.

> The knowledge base of clinical social work includes theories of biological, psychological, and social development; diversity and cultural competency; interpersonal relationships; family and group dynamics; mental disorders; addictions; impacts of illness, trauma, or injury; and the effects of the physical, social, and cultural environment. This knowledge is inculcated in social work graduate school and is fused with direct-practice skills that are developed by the practitioner during a period of at least two years of post-graduate experience under clinical supervision. This period should suffice to prepare the clinical social worker for autonomous practice and state-licensure as a clinical social work professional. In the years that follow, clinical social workers may pursue an advanced-generalist practice or may decide to specialize in one or more areas.

https://abecsw.org/clinical-social-work/clinical-social-work-described/

whether the attorney-client privilege covers the notes that Mr. Regola took during depositions herein and at his criminal trial. The psychiatrist/psychologist-patient privilege is codified; the interpretation of a statute is a question of law, resulting in a standard of review that is *de novo* and a scope of review that is plenary. *McLaughlin v. Garden Spot Village*, 144 A.3d 950 (Pa.Super. 2016). The identical standard of review applies to our review of the trial court's conclusion that the attorney-client privilege, which likewise has been codified, is inapplicable to notes that Mr. Regola took at his attorneys' instructions during the course of litigation. *Yocabet*, *supra* at 1019 (citing *In re Thirty–Third Statewide Investigating Grand Jury*, 86 A.3d 204, 215 (Pa. 2014) (appellate review is plenary where appeal involves application of attorney-client privilege).

Simply put, we owe no deference at all to the trial court's rulings herein. We additionally note the following. Judge Marsili provided absolutely no analysis of why he concluded that the materials were not subject to the asserted privileges, which were continually raised and briefed by the Regolas. Indeed, he cites not a single case. His opinion merely contains a recitation of procedural matters. During his review of the procedure, he also incorrectly states that: 1) Judge Caruso's order required production of the materials in question; and 2) the Regolas did not provide detailed privilege logs.

As our assiduous review of the record reveals, Judge Caruso's order specifically deferred ruling on the privileges asserted by the Regolas and did not, to any extent, require the production of the materials at issue in this appeal, which are communications that the Regolas gave to their mental health counselor and attorneys, respectively, about the events surrounding Bobby's suicide. In addition, the Regolas unquestionably compiled detailed privilege logs and complied, to the letter, with the June 11, 2014 order issued by Judge Marsili, even though that order inexplicably, and without any analysis, ordered Mr. Regola to waive his attorney-client privilege in the notes being held by Mr. Porter.

We now examine the law generally applicable to privileges. Even though Pennsylvania courts disfavor privileges since they obstruct the ability to ascertain the truth, we will "faithfully adhere to constitutional, statutory, or common law privileges." *McLaughlin*, *supra* at 953. If "the legislature has considered the interests at stake and has granted protection to certain relationships or categories of information, the courts may not abrogate that protection on the basis of their own perception of public policy unless a clear basis for doing so exists in a statute, the common law, or constitutional principles." *Id*. (citation omitted). This court does not have the power to "order disclosure of materials that the legislature has explicitly directed be kept confidential." *Id*. (citation omitted).

## PSYCHIATRIST/PSYCHOLOGIST-PATIENT

We first analyze whether the Regolas must produce for *in camera* review the records of Mrs. Regola's counseling sessions. In this connection, we stress that Mr. Farrell is seeking statements made by Mrs. Regola about the events at issue in this lawsuit, and it is those communications by Mrs. Regola that Judge Marsili intends to give to Mr. Farrell. With respect to the counseling records, the Regolas invoked the psychiatrist/psychologist-patient privilege:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S. § 5944.[2]

---

[2] It is interesting to note that, prior to the enactment of this statutory privilege, in the case of **In re "B**," 394 A.2d 419 (Pa. 1978), our Supreme Court recognized a constitutionally-based privilege in a patient's communications to a psychiatrist. Therein, the administrator of a psychiatric hospital was held in criminal contempt during the dispositional phase of a juvenile delinquency proceeding because the administrator refused to release the records of counseling sessions that the juvenile's mother had undergone at the facility. Those communications were sought in order to facilitate the determination of the appropriate placement for the juvenile.

On appeal, our Supreme Court was divided, but five Justices agreed that the contempt finding should be reversed. While Justice Roberts
*(Footnote Continued Next Page)*

concluded that the codified doctor-patient privilege applied, pertinent in the present case is the analysis employed by Justices Mandarino, Nix, and Larson, with Justice O'Brien's concurrence. Justice Roberts concluded that the disclosure of the records of mother's treatment at the psychiatric hospital was "barred by the patient's constitutionally protected right of privacy." *Id*. at 422. After outlining the basis for the constitutional right to privacy in both the United States and Pennsylvania Constitutions, Justice Roberts observed that the "right of privacy derived from these constitutional underpinnings protects the privacy of intimate relationships like those existing in the family, marriage, motherhood, procreation, and child rearing" and extends to "the home, . . . the doctor's office, the hospital, the hotel room, or as is otherwise required to safeguard the right to privacy involved in such intimate relationships." *Id*. 424. Justice Roberts continued that "in Pennsylvania, an individual's interest in preventing the disclosure of information revealed in the context of a psychotherapist-patient relationship has deeper roots than the Pennsylvania doctor-patient privilege statute, and that the patient's right to prevent disclosure of such information is **constitutionally** based." *Id*. at 425 (emphasis added). Our High Court observed that, "The nature of the psychotherapeutic process is such that disclosure to the therapist of the patient's most intimate emotions, fears, and fantasies is required." *Id*. at 425. It continued:

> a person enters "psychotherapy because they have deep-seated conflicts and impairment of functioning which limit their ability to work effectively and to enjoy fully satisfying relationships with other people. To alleviate these blocks and conflicts, the therapist asks the patient to abandon 'rational thought' and to express thoughts and fears that may never have been revealed to anyone else. Indeed, these innermost thoughts are often so painful, embarrassing or shameful that the patient may never before have allowed himself to acknowledge them.
>
> The patient in psychotherapy knows that such revelations will be expected if the process is to be beneficial. In laying bare one's entire self, however, the patient rightfully expects that such revelations will remain a matter of confidentiality exclusively between patient and therapist.

*Id*. at 425-26 (citations omitted). The Court reversed the contempt finding issued by the juvenile court.
*(Footnote Continued Next Page)*

This privilege "is designed to protect confidential communications made and information given by the client to the psychotherapist in the course of treatment," but does not "protect the psychotherapist's own opinion, observations, diagnosis, or treatment alternatives[.]" **Commonwealth v. Simmons**, 719 A.2d 336, 341 (Pa. Super. 1998).

Mr. Farrell is not seeking to discover the opinions, observations, diagnosis, or treatment plan of Mrs. Regola's therapist. Rather, he is attempting to uncover statements made by Mrs. Regola during the course of her therapy, which falls squarely within the parameters of the privilege. We are aware that the privilege is not absolute and that it can be waived when a person knew or should have known that his mental health would be called into question by filing a legal action. **See Commonwealth v. T.J.W.**, 114 A.3d 1098 (Pa.Super. 2015). However, Mrs. Regola did not initiate this lawsuit, and the allegations in the complaint do not implicate her mental health. Rather, they pertain to her actions with respect to the gun in her home.

This privilege has withstood a challenge on constitutional grounds. For example in **Commonwealth v. Kyle**, 533 A.2d 120 (Pa.Super. 1987), Kyle physically and sexually assaulted the owner of a store and was found guilty of numerous offenses, including rape and involuntary deviate sexual

*(Footnote Continued)* ——————————

intercourse. After the attack, the victim received counseling from a psychologist. Kyle sought her counseling file to ascertain if it contained evidence of a viable defense or, alternatively, asked that the trial court inspect the file. The trial court concluded that all the records of the counseling sessions were privileged under § 5944, and refused to find that the privilege yielded to Kyle's confrontation clause right to review the record and ascertain whether it contained information potentially of value to him. This Court upheld the trial court, declining to grant the defendant the right to *in camera* review of the counseling record so that the court could determine whether there was any materially exculpatory evidence. We concluded that "the Pennsylvania law in this case grants an absolute privilege for communications between a licensed psychologist and a client." *Id* at 125. Based upon the fact that § 5944 had no exceptions to its non-disclosure mandates, it was held to embody **a strong public policy of an absolute privilege**.

This Court outlined the reason that the psychiatrist/psychologist-client privilege was sacrosanct:

> Among physicians, the psychiatrist has a special need to maintain confidentiality. His capacity to help his patients is completely dependent upon their willingness and ability to talk freely. This makes it difficult if not impossible for him to function without being able to assure his patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule, there is wide agreement that confidentiality is a *sine qua non* for successful psychiatric treatment. The relationship may well be likened to that of the

> priest-penitent or the lawyer-client. Psychiatrists not only explore the very depths of their patients' conscious, but their unconscious feelings and attitudes as well. Therapeutic effectiveness necessitates going beyond a patient's awareness and, in order to do this, it must be possible to communicate freely. A threat to secrecy blocks successful treatment.

*Id*. at 126 (quoting Report No. 45, Group for the Advancement of Psychiatry 92 (1960), *quoted in* Advisory Committee's Notes to Proposed Rules, 56 F.R.D. at 242). Indeed, it is generally agreed "in the legal and medical worlds that confidentiality of communications between patients and therapists is the *sine qua non* of successful psychiatric treatment." **Id**. (quoting **Commonwealth ex rel. Platt v. Platt**, 404 A.2d 410, 425 (Pa.Super. 1979) (Spaeth, J., concurring and dissenting). Stated differently,

> patient confidence is essential for effective treatment. Because the information revealed by the patient is extremely personal, the threat of disclosure to outsiders may cause the patient to hesitate or even refrain from seeking treatment. The privilege thus serves the public interest in promoting a society in which the general well-being of the citizenry is protected.

**Kyle**, **supra** at 126 (footnote omitted). Thus, § 5944 "effectuated a means whereby the goal of effective treatment would not be impaired." **Id**.

Herein, the trial court ordered the Regolas to reveal to it all of the records of Mrs. Regola's counseling sessions at Kreinbrook Psychological Services for the sole purpose of discerning any communications made by Mrs. Regola to her health care providers about this incident. The crux of the matter in this appeal is whether the parameters of the statutory privilege applies to the counseling sessions that Mrs. Regola had with Mark R. Jones,

- 24 -

a licensed clinical social worker who provided a portion of Mrs. Regola's mental health care. The Regolas first ask us to apply the reasoning of **Jaffee v. Redmond**, 518 U.S. 1 (1996), wherein the United States Supreme Court extended the federal psychiatrist-patient privilege to clinical social workers. Appellant's brief at 16-18.[3] We decline this invitation to extend the statute, as it is unnecessary.

---

[3] The United States Supreme Court proffered compelling reasons for extending the privilege to clinical social workers:

> All agree that a psychotherapist privilege covers confidential communications made to licensed psychiatrists and psychologists. We have no hesitation in concluding in this case that the federal privilege should also extend to confidential communications made to licensed social workers in the course of psychotherapy. The reasons for recognizing a privilege for treatment by psychiatrists and psychologists apply with equal force to treatment by a clinical social worker such as Karen Beyer. Today, social workers provide a significant amount of mental health treatment. **See**, *e.g.,* U.S. Dept. of Health and Human Services, Center for Mental Health Services, Mental Health, United States, 1994, pp. 85–87, 107–114; Brief for National Association of Social Workers et al. as *Amici Curiae* 5–7 (citing authorities). Their clients often include the poor and those of modest means who could not afford the assistance of a psychiatrist or psychologist, *id.,* at 6–7 (citing authorities), but whose counseling sessions serve the same public goals. Perhaps in recognition of these circumstances, the vast majority of States explicitly extend a testimonial privilege to licensed social workers We therefore agree . . . that drawing a distinction between the counseling provided by costly psychotherapists and the counseling provided by more readily accessible social workers serves no discernible public purpose. . . .

**Jaffee v. Redmond**, 518 U.S. 1, 15–17 (1996) (footnotes omitted).

Instead, we agree with the Regolas' alternative argument on appeal, which is that existing Pennsylvania precedent protects any communications that Mrs. Regola made to any member of the treatment team at Kreinbrook Psychological Services. Appellants' brief at 18. In this respect, the Regolas rely upon **Simmons, supra**, where a company known as Mentor Clinical Care, Inc. ("Mentor") appealed an order compelling it to produce records it possessed about T.W., a child who was allegedly abused by Simmons. Mentor asserted the documents sought by the court were privileged under § 5944. Mentor operated as follows. At the request of a county department of human services, it would provide, among other services, mental health care to children without proper parental care and supervision. The mental health services were delivered by a treatment team led by Mentor's director, a licensed psychiatrist who worked for Mentor three days a week. The key team member was a mentor adult, with whom the child lived and who kept a log about a child's positive and negative behavior that impacted on the goals of the treatment plan developed by the psychiatrist. Other team members delivered the mental health services and consisted of clinical coordinators who had a master's degree in social work, education, counseling or human services and who met with the mentor adult weekly.

The victim in **Simmons** went to live with the defendant and his wife, who was the victim's mentor adult. After he was charged with sexually abusing T.W., Simmons issued a subpoena to Mentor, demanding that it turn

over all of its records concerning T.W. Mentor furnished certain records that it did not consider privileged, but moved to quash the subpoena to the extent that its records included information about mental health treatment provided to T.W. Mentor's request was denied since T.W.'s mental health care was being provided by social workers and a mentor adult, who had no mental health training. We overruled the trial court and held that "any oral communication by T.W. in private to **any** member of the treatment team and used by the team for the purpose of psychotherapeutic evaluation is privileged. Additionally, any reference to such a communication in Mentor's files is privileged as well." **Id**. at (emphasis in original).

In **Simmons**, we noted that, as expressly stated in § 5944, the scope of the psychiatrist/psychologist-patient privilege is to be interpreted in the same manner as communications between an attorney and client. We observed that:

> In determining whether a communication by a client to someone other than his attorney is covered by the attorney-client privilege, courts have held that as long as the recipient of the information is an agent of the attorney and the statement is made in confidence for the purpose of facilitating legal advice, it is privileged. **Commonwealth v. Noll**, 443 Pa.Super. 602, 662 A.2d 1123, 1126 (1995), *appeal denied,* 543 Pa. 726, 673 A.2d 333 (1996) (confidential statement to accident reconstructionist hired by attorney to determine whether the client should sue is privileged); **Commonwealth v. Mrozek**, 441 Pa.Super. 425, 428-31, 657 A.2d 997, 999-1000 (1995) (inculpatory statement to attorney's secretary made while defendant was seeking to retain attorney for legal representation and advice is privileged); **Commonwealth v. Hutchinson**, 290 Pa.Super. 254, 434 A.2d

740, 744-745 (1981) (inculpatory statement made to investigator for public defender's office is privileged).

*Id*. at 343.

This Court observed that, for purposes of the attorney-client privilege, "the job description of the recipient of a confidential communication or their lack of legal training is irrelevant so long as the recipient is an agent of an attorney and the statement is made in confidence for the purpose of obtaining or facilitating legal advice." *Id*. We continued that this "reasoning should apply with equal force to members of the Mentor treatment team in conversations with T.W. in the course of facilitating the treatment plan." *Id*. The **Simmons** Court held that "the fact that the other members of the treatment team were not themselves psychologists does not defeat the privilege should it otherwise apply" and that "T.W. is entitled to protection in her confidential communications to members of the team." *Id*. at 343-44 (footnote omitted).

In the present case, Mrs. Regola sought mental health treatment at Kreinbrook Psychological Services, which is operated by a licensed psychologist. Her therapy was conducted by a member of his organization. Regardless of Mr. Jones' title, the record establishes that the mental health counseling that he provided for Mrs. Regola was performed in his capacity as a member of team that included a licensed psychologist, Dr. Kreinbrook, at Dr. Kreinbrook's facility, Kreinbrook Psychological Services. Mrs. Regola had

- 28 -

every right to believe that her communications, which were clearly obtained for purposes of seeking mental health treatment, would be confidential. Hence, the March 11, 2015 order is reversed to the extent that it required that the records of Mrs. Regola's treatment at Kreinbrook Psychological Services be turned over to the trial court so that the court could, in turn, provide her communications about this incident to Mr. Farrell.

## ATTORNEY-CLIENT PRIVILEGE

We now address Mr. Regola's assertion of the attorney-client privilege in the notes that he took at the direction of his attorney in the present matter and his attorney in his criminal case. Although the attorney-client privilege is derived from the common law, *Yocabet*, *supra*, it now is codified for purpose of both civil and criminal matters. "In a civil matter, counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S. § 5928. Similarly: "In a criminal proceeding, counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S. § 5916.

In *Yocabet*, we reiterated, "The attorney-client privilege is intended to foster candid communications between counsel and client, so that counsel

may provide legal advice based upon the most complete information from the client." *Yocabet*, *supra* at 1027 (citation omitted). Accordingly, "the privilege is founded upon a policy extrinsic to the protection of the fact-finding process." *Id.* (citation omitted). The privilege operates in both directions, protecting communications from the lawyer to a client as well as ones from a client to his attorney. *Gilliard v. AIG Insurance Co.*, 15 A.3d 44 (Pa. 2011). The privilege is properly invoked if

> 1) The asserted holder of the privilege is or sought to become a client.
>
> 2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.
>
> 3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.
>
> 4) The privilege has been claimed and is not waived by the client.

*Yocabet*, *supra* at 1027 (citation omitted).

In the present case, Mr. Regola was Mr. Porter's client when he made the notes at the criminal trial where he was the named defendant and he was Mr. Leonard's client when he took the notes during the civil depositions in this matter wherein he is a named defendant. Both Mr. Porter and Mr. Leonard are licensed members of the bar. The notes were taken at the direction of the attorneys for purposes of securing Mr. Regola's assistance in

defending him in the lawsuits in question and given only to those lawyers. The privilege was never waived and, instead, has been continually asserted herein.

Mr. Farrell's position is that the notes were not privileged because Mr. Regola said he did not know why he was taking them and would probably do nothing with them. Mr. Regola's statements do not mean that the privilege does not apply. They merely indicate that he did not know why he was asked by his lawyers to take the notes and he would not be doing anything with them—his lawyers would. The privilege logs are clear and unequivocal. The attorneys in question stated that Mr. Regola took the notes at their direction for purposes of aiding Mr. Regola's defense in lawsuits filed against him and continued that they took possession of the notes after they were taken. Notes taken by a client in a lawsuit at the lawyer's behest and given to the attorney so that the attorney can help defend the client in the suit are absolutely privileged.

In conclusion, we hold that the Regolas are not required to produce to anyone, either the trial court or Mr. Farrell, any of Mrs. Regola's counseling records from Kreinbrook Psychological Services. They also are not required to produce to the trial court or to Mr. Farrell any of the notes taken by Mr. Regola either in this case or in his criminal case.

The March 11, 2015 order is reversed in its entirety. Case remanded. Jurisdiction relinquished.

Judge Mundy did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/8/2016