J-A23040-24

2025 PA Super 8

| | | |
|---|---|---|
| CAROL KING, INDIVIDUALLY, AND AS ADMINISTRATOR OF THE ESTATE OF JUSTIN P. KING, DECEASED | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| KAPPA SIGMA FRATERNITY, ALPHA SIGMA TAU SORORITY, KENNETH BELL, BRADLEY BRODZICK, NICHOLAS COLANTINO, JR., BENJAMIN CONFER, ADAM HAYDUCEK, CIAN KELLETT, MICHAEL KUPRESS, CESAR LABOY, BENJAMIN PACKER, JUSTIN ROMANO, ALLAN SCHAIBLE, ALEXANDER SCHEEL, DEREK SHAPIRO, NATHAN SLEDZIEWSKI, JOHN STAUFFENBERG, RICHARD YI, CAITLYNN ALBRIGHT, VICTORIA BANKS, LINDSEY DEDICS, DANA DOIMI, CARRISSA DONNELLY, DANIELLE GODORECCI, KAITLYN GRIFFITH, ALEXA HADY, RACHEL JEFFERS, SHELBY KENNEDY, SARA KERVICK, DANIELLE MAUCERI, JOCELYN MORGAN, TAYLOR ROBERTS, CARA THOMAS, JULIA TRAINER, SARA WECH, JESSICA WESTENBERGER, TAYLOR WILLIAMS, AND KELSEY ZOLA | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | No. 55 MDA 2024 |
| APPEAL OF:  ALPHA SIGMA TAU SORORITY | : : | |

Appeal from the Order Dated December 6, 2023
In the Court of Common Pleas of Luzerne County
Civil Division at No:  2021-01858

BEFORE:   OLSON, J., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY STABILE, J.:                              **FILED JANUARY 13, 2025**

This interlocutory appeal concerns whether 48 pages of handwritten interview notes taken by representatives of Alpha Sigma Tau Sorority ("AST") are subject to disclosure to the plaintiff in the underlying action, Carol King, individually and as administrator of the Estate of Justin P. King, deceased ("Plaintiff").  Finding that the trial court did not commit an error of law or abuse its discretion by ordering the notes to be partially redacted and disclosed to Plaintiff, we affirm.

In 2019, Justin P. King (the decedent) attended a sorority party thrown by the Beta Nu Chapter of AST at Bloomsburg University, where the decedent was a freshman.  It is alleged by Plaintiff that after being urged by sorority members to drink several highly alcoholic beverages, the decedent got lost on campus and fell down a steep slope, resulting in fatal injuries.  The Beta Nu Chapter was suspended by the university due to the role its members had in that incident.

Plaintiff filed suit in 2021, alleging that AST, and its members who attended the party at the Beta Nu Chapter house, were liable for the decedent's death.  In the ensuing litigation, Plaintiff learned that, soon after the incident, but before the suit was filed, AST's representatives had interviewed 15 of its members who were present at the Beta Nu Chapter party.  All of those members were later named as AST's co-defendants in Plaintiff's

_____

[*] Former Justice specially assigned to the Superior Court.

action, and each of them attended their respective interviews with their own counsel.

On May 2, 2023, Plaintiff filed requests for production so that it could obtain from AST any documentation of the interviews that AST had conducted with its members – this included the handwritten interview notes at issue in the present appeal. As to those notes, AST objected that they were not subject to disclosure under the work-product doctrine and the attorney-client privilege. AST emphasized that the top of each page of the notes bore the heading, "Attorney-Client Privilege For Work Product." Plaintiff responded to AST's objection by moving to compel the production of the notes, insisting that no such protections applied.

On September 8, 2023, the trial court ordered AST to produce a privilege log, as well as the documents it believed were undiscoverable. No privilege log was ever provided, but AST did produce 49 pages of notes taken during the interviews of its members. AST argued at that point that all of the notes were the work product of its lead counsel in the litigation, John J. Delany, III, who was present at the interviews.

In an affidavit, another attorney representing AST (Michael Logue) averred that Pages 1 to 45 of the notes in question were written by AST's chief executive officer (CEO), James Paponetti; Pages 46 and 47 were written by AST's chief operating officer (COO), Angie Bong; and Page 48 was a sign-in sheet created to help Mr. Delany to keep track of who had been interviewed. Neither Mr. Paponetti, nor Ms. Bong, are AST's legal counsel.

According to the verification, "Mr. Delany was present [when those notes were written] to provide [AST] with advice and guidance on the issue of why the Beta Nu chapter at Bloomsburg University was under interim suspension as of October 2019, when the interviews in question took place." **See** Trial Court 1925(a) Opinion, 3/5/2024, at Exhibit "E" (Verification of Michael R. Logue, dated 11/10/2023). The verification does not state whether the notes were actually conveyed to Mr. Delany, or whether they were transmitted/communicated to anyone other than AST's attorneys. **See id**.[1]

Following oral argument on the issue, and due to the lack of the mandated privilege log, the trial court conducted an *in camera* review of the notes. This review was limited to determining whether the notes indeed contained any privileged information, such as legal advice, opinions, or litigation strategy. On December 6, 2023, the trial court entered an order directing partial redactions of Pages 1, 3, 4, 5, and 46 of the interview notes. The entirety of Page 49 was found to be the protected attorney work product of AST. All unredacted portions of the notes were to be turned over to Plaintiff.[2]

In response, AST filed the present interlocutory appeal to challenge the trial court's order requiring the production of Pages 1 through 48 of the

---

[1] The verification did not address Page 49 of AST's interview notes.

[2] As AST is only challenging the required disclosure of the unredacted portion of the interview notes, the *redacted* portions are irrelevant for the purposes of this appeal.

redacted notes to be disclosed. The trial court entered an opinion in accordance with Pa.R.A.P. 1925(a). Essentially, the trial court rejected AST's invocation of the attorney work product doctrine because there was no indication that the notes were prepared by or at the behest of AST's counsel, Mr. Delany. The notes were instead written by AST's CEO and COO, and the content of their writings was merely a factual summary of what the interviewees had stated. *See* Trial Court 1925(a) Opinion, 3/5/2024, at 7-8.

As to the application of the attorney-client privilege, the trial court ruled that AST waived the issue by not raising it when the parties argued their respective positions. The trial court explained further that even if the issue had been preserved, it would not be availing because AST failed to establish that the notes contained any private communications between AST and its counsel which related to facts concerning AST's legal defense against Plaintiff's potential claims. *See id*., at 9-11.

In its brief, AST now raises two issues:

A. Whether the trial court's December 6, 2023 Order should be reversed because the court committed an error of law and/or abused its discretion in requiring AST to produce 48 of 49 pages of the documents (subject to limited redactions) referenced in the court's December 6, 2023 Order, because the production of documents was ordered and required by the court in violation of the attorney work product doctrine recognized by Pa.R.C.P. 4003.3, and the common law pertaining thereto[.]

B. Whether the trial court's December 6, 2023 Order should be reversed because the court committed an error of law and and/or abused its discretion in requiring AST to produce 48 of the 49 pages of the documents (subject to limited redactions) referenced in the court's December 6, 2023 Order, because the production of

documents was ordered and required by the court in violation of the attorney-client privilege as set forth in 42 Pa.C.S. § 5928, and the common law pertaining thereto[.]

Appellant's Brief, at 10-11 (suggested answers omitted).

AST's first claim is that the trial court erred in determining that the redacted version of its interview notes was not protected by the attorney work product doctrine.

Discovery orders are subject to an abuse of discretion standard of review. *See St. Luke's Hosp. of Bethlehem v. Vivian*, 99 A.3d 534, 540 (Pa. Super. 2014). A trial court may abuse its discretion by making a ruling that is "manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will." *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 984 (Pa. Super. 2005). The applicability of the work-product doctrine, however, is a pure question of law that is subject to a *de novo* standard of review in which no deference is afforded to the trial court's decision. *See McIlmail v. Archdiocese of Phila*., 189 A.3d 1100, 1107 (Pa. Super. 2018).

Generally, the Pennsylvania Rules of Civil Procedure allow a party to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" Pa.R.C.P. 4003.1(a). A relevant subject matter is one that may relate to any party's claim or defense. *See id*. Parties may therefore invoke Rule 4003.1 to discover "the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons

having knowledge of any discoverable matter." ***Id***.; ***see generally BouSamra v. Excela Health***, 210 A.3d 967, 976-78 (Pa. 2019).

Rule 4003.1 itself contemplates that some materials which are relevant to a claim or defense may nevertheless be privileged and not subject to disclosure. ***See*** Pa.R.C.P. 4003.1(a). One such exception is the attorney work product doctrine, which is set forth in Pa.R.C.P. 4003.3. This rule provides that a party "may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. Pa.R.C.P. 4003.3. **However, the disclosed material "shall not include . . . the mental impressions of a party's attorney or his or her** conclusions, opinions, **memoranda**, **notes or summaries**, legal research or legal theories." ***Id***. (emphases added).

The doctrine extends – to a lesser degree – to material prepared by representatives of a party other than the party's counsel. As to such a person, "**discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics**." ***Id***. (emphasis added). Thus, while the "notes or summaries" of a party's attorney may be absolutely privileged under Pa.R.C.P. 4003.3, the same is *not* true for those created by a party's non-attorney representatives. ***See id***.; ***see also***

Pa.R.C.P. 4003.3 (Explanatory Comment -1978, at para. 2) ("Memoranda or notes made by the [non-attorney] representative are not protected").

The test for invoking the attorney work product doctrine and the attorney-client privilege is the same, and it is not uncommon for both to be referred to as "privileges." *See Carlino East Brandywine, L.P. v. Brandywine Village Assocs.*, 260 A.3d 179, 196 n.7 (Pa. Super. 2021) (explaining that referring to the work product doctrine as a privilege is technically a misnomer because it is embodied in a procedural rule, Pa.R.C.P. 4003.3.).

The party asserting that the work product doctrine (or a privilege) applies "bears the burden of producing facts establishing proper invocation[.]" *Id*., at 196-97. "Once the invoking party has made the appropriate proffer, then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because [the doctrine or] the privilege has been waived or because an exception . . . applies." *Id*. (quoting *Yocabet v. UPMC Presbyterian*, 119 A.3d 1012, 1019 (Pa. Super. 2015)).

In the present case, the trial court ruled that the redacted version of the subject interview notes is subject to disclosure under Pa.R.C.P. 4003.3, and we find no error of law or abuse of discretion in that ruling. The principal basis for the trial court's decision was that the interview notes were not created by or at the behest of AST's counsel, having been written by AST's CEO and COO. Although each page of the notes was styled as "Attorney-Client Privilege For

Work Product," the substantive content of the notes did not indicate that they in fact belonged to AST's counsel, Mr. Delany, for the purposes of Rule 4003.3. *See* Trial Court 1925(a) Opinion, 3/5/2024, at 5-8.

AST has argued that the notes must be considered the work product of its counsel because Mr. Delany directed AST's CEO and COO to compile them for the purpose of preparing for future litigation. AST's counsel stated further in a sworn affidavit (verification) that Mr. Delany appeared at the interviews with AST's CEO and COO to aid in the legal defense against Plaintiff's then-impending lawsuit. *See id*., at Exhibit "E," para. 10 (Verification of Michael R. Logue, dated 11/10/2023).

Yet, AST's contention rests on a critical and unsubstantiated point of fact – that Mr. Delaney was ultimately responsible for generating the content of the notes taken by AST's non-attorney representatives. The problem with that argument is that counsel's role in the creation of the notes is not evident from the notes themselves, or from any other record evidence.

It is undisputed that Mr. Delany did not write the notes himself. The content of the redacted version of the notes is exclusively factual, detailing the questions posed to Beta Nu members about the night of the decedent's death, and the answers the members gave. The affidavit submitted by AST's counsel, Mr. Logue, nowhere stated that Mr. Delany specifically directed AST's CEO and COO about what to write down.

Again, as the party invoking the work product doctrine, the initial burden was on AST to present facts establishing proper invocation. *See Carlino East*

***Brandywine***, 260 A.3d at 196-97. The trial court found that "AST offered no proof that the [interview] notes contained counsel's notes, impressions, *etc.* that would unconditionally protect the notes from disclosure." Trial Court 1925(a) Opinion, 3/5/2024, at 8.

Having reviewed the relevant portions of the record, including the interview notes and the parties' filings, we are unable to identify any facts which purport to show that the redacted version of the interview notes was created at counsel's direction, such that they would be protected under Rule 4003.3. Nor do the redacted notes reflect any impressions of the AST representatives who wrote them. Thus, as a matter of law, the trial court did not err in determining that AST failed to carry its burden of establishing the facts needed to invoke the work product doctrine, making it inapplicable in this case.

AST's second claim is that the trial court erred in determining that its interview notes were not protected by the attorney-client privilege. At the outset, we find that AST preserved this issue for appellate review, and did not waive it as the trial court held. AST asserted the privilege on several, though not all, occasions when the issue was presented to the trial court, and this was sufficient for preservation purposes.[3]

---

[3] When Plaintiff served its discovery requests, AST objected in part on the ground of attorney-client privilege. AST later attempted to invoke the attorney-client privilege in its response to Plaintiff's motion to compel discovery, arguably laying out the facts needed to establish the privilege in

*(Footnote Continued Next Page)*

- 10 -

We now turn to the merit of AST's claim. The attorney-client privilege is a statutory right afforded to clients in civil cases. *See* 42 Pa.C.S.A. § 5928.[4] Its purpose is to protect communications between a client and the client's legal counsel so that information can be conveyed freely during the preparation of a legal matter. Section 5928 of the Judicial Code provides that "counsel shall not be competent or permitted to testify to confidential communications made to him [or her] by his [or her] client[.]" *Id*. The client may also not be compelled to divulge such communications unless the client waives the privilege. *See id*.

Our case law is clear that this privilege belongs solely to the client, not to counsel, and that where the client is a corporate entity, such as AST, the privilege extends to "communications between [the entity's] attorneys and agents or employees authorized to act" on the entity's behalf. *See BouSamra*, 210 A.3d at 983. A client may waive an otherwise privileged communication by divulging it to a third party. *See id*., at 984.

This Court has outlined four elements that must be established in order for the privilege to apply:

___

Mr. Logue's affidavit (verification). Finally, AST raised the attorney-client privilege in its 1925(b) statement. Thus, although AST did not focus on this privilege when disputing Plaintiff's discovery demands in argument before the trial court, the privilege was timely asserted, and not subsequently waived, preserving the issue for appellate review. *See Ford-Bey v. Pro. Anesthesia Servs. Of N. Am., LLC.*, 229 A.3d 984, 990 n.7 (Pa. Super 2020).

[4] The analogous provision for criminal cases is codified at 42 Pa.C.S.A. § 5916.

(1) The asserted holder of the privilege is or sought to become a client.

(2) The person to whom the communication was made is a member of the bar of a court or his subordinate.

(3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

(4) The privilege has been claimed and is not waived by the client.

***Ford-Bey v. Pro. Anesthesia Servs. Of N. Am.***, LLC., 229 A.3d 984, 990-91 (Pa. Super. 2020) (quoting ***Yocabet***, 119 A.3d at 1027)).

As with the attorney work product doctrine, the party asserting the attorney-client privilege has the initial burden of showing that the privilege has been properly invoked.  ***See Ford-Bey***, 229 A.3d a 990-91.  If the trial court finds that the proponent of the privilege has set forth facts which make it applicable, then the burden shifts to the party seeking disclosure of the communication to produce facts which would make it discoverable.  ***See id***.

Here, we agree with the trial court that, as a matter of law, the privilege did not apply.  AST had its CEO, COO, and counsel attend interviews with over a dozen Beta Nu sorority members.  These members were later named as co-defendants of AST in Plaintiff's action.  The members each appeared at their interviews with their own attorneys, who were not affiliated with AST.  The content of the redacted version of the subject interview notes was limited to the questions asked of the members by AST's CEO, and the answers those members gave in response.

AST argues that the notes were nevertheless private "communications" because they were conveyed from AST's representatives to AST's counsel, Mr. Delany. However, the third element of the above-mentioned test requires the communication to relate "*to a fact of which the attorney was **informed** by his client*, *without the presence of strangers*." ***See id***. (emphasis added). Mr. Delany was not being confidentially "informed" of any facts by AST's CEO or COO when they wrote down the verbal responses given by AST's members – those responses were already heard by Mr. Delany and other third parties who attended the interview. Rather, it was AST's *members* who were informing Mr. Delany of facts in the presence of their own counsel.[5]

In its brief, AST cites our decision in ***Farrell v. Regola***, 150 A.3d 87 (Pa. Super. 2016), for the proposition that a party's interview notes are "absolutely privileged" when taken at the behest of that party's counsel. While we acknowledge the panel in ***Farrell*** employed that broad language when discussing the scope of the attorney client privilege, the case does not compel reversal here because our facts are materially distinguishable.

In ***Farrell***, one of the defendants took handwritten notes both during depositions in civil proceedings and a related criminal trial. The plaintiffs moved to compel the production of those notes, and the defendants objected that they were privileged attorney-client communications. The defendants produced a detailed privilege log, which stated that the notes were taken at

---

[5] To the extent that any other, privileged information was conveyed to Mr. Delany in the notes, it has already been redacted.

the direction of counsel for the sole purpose of aiding in the preparation of the defendants' cases. *See Farrell*, 150 A.3d at 102.

Significantly, the log referred to the content of the notes, describing them as generally containing "questions and observations [a defendant] shared with his counsel." *Id*., at 92 (quoting defendants' privilege log). The log provided further that the notes had only been given to counsel, and that the defendants' attorneys took possession of them immediately after they were taken. *See id*., at 102. We held that since the defendants had asserted the requisite facts, the notes were "absolutely privileged." *See id*.

The present case is distinguishable in two important respects. First, the absence of a privilege log prompted the trial court and this Court to review AST's interview notes, which have been held under seal. It was apparent to the trial court, as well as this Court, that, unlike in *Farrell*, the notes here contained no "questions and observations" of AST which were shared with its counsel. Put another way, the defendant's notes in *Farrell* privately communicated facts that counsel would not otherwise have been privy to; but here, AST conveyed no such communications to counsel through the notes of its CEO and COO, and AST did not state otherwise in its verification.

The second distinction is that the defendant in *Farrell* attested to the private and confidential nature of the communications in his notes to counsel. The holding in *Farrell* was in part predicated on the fact that the notes, which contained the defendant's personal observations, "were provided to counsel only." *Id*., at 92. AST did not, and perhaps could not, attest to that fact in

this case. Nor did AST state in its verification that its notes remained confidential, to be used only for the preparation of its legal defense.

For these reasons, we conclude that the communications memorialized in the redacted version of the interview notes were not privileged communications made between AST and its counsel. The facts asserted by AST instead establish that the communications were made by and in the presence of independent third parties (Beta Nu members) to AST's representatives (AST's CEO, COO, and lead counsel), and that counsel was not informed of any confidential information through AST's redacted interview notes. Thus, the redacted version of the interview notes is discoverable, and the trial court's order requiring their disclosure to Plaintiff must be upheld.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 01/13/2025