J-A02012-16

2016 PA Super 161

| | |
|---|---|
| VICKI L. MCLAUGHLIN AND CAROL L. MACCONNELL, CO-ADMINISTRATRICES FOR THE ESTATE OF DOROTHY L. BRACE, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| GARDEN SPOT VILLAGE AND GARDEN SPOT VILLAGE OF AKRON D/B/A MAPLE FARM NURSING CENTER AND GLENN HERSHEY | |
| APPEAL OF:  GARDEN SPOT VILLAGE AND GARDEN SPOT VILLAGE OF AKRON D/B/A MAPLE FARM NURSING CENTER | No. 647 MDA 2015 |

Appeal from the Order Entered April 13, 2015
In the Court of Common Pleas of Lancaster County
Civil Division at No: CI-14-01922

BEFORE:  PANELLA, STABILE, and FITZGERALD,[*] JJ.

OPINION BY STABILE, J.:                          **FILED JULY 22, 2016**

Appellant, Garden Spot Village and Garden Spot Village of Akron d/b/a

Maple Farm Nursing Center ("Appellant") appeals from the April 13, 2015

order denying Appellant's motion for a protective order.  We affirm.

Plaintiffs Vicki L. McLaughlin and Carol L. MacConnell, as co-

administratrices of the estate of Dorothy L. Brace (the "Decedent"), sued

Appellant and Glenn Hershey ("Hershey") for negligence, breach of fiduciary

---

[*] Former Justice specially assigned to the Superior Court.

duty, and premises liability after Hershey sexually assaulted the Decedent while Hershey and the Decedent were residents of Appellant's nursing home. Hershey was a registered sex offender before he assaulted the Decedent. Hershey subsequently pled guilty to involuntary deviate sexual intercourse[1] and received a sentence of eight to twenty years of incarceration. The Decedent passed away ten months after the assault from unrelated causes. Plaintiffs alleged Appellant was aware of the threat Hershey posed to the Decedent.

Presently, we must resolve a discovery dispute. The Older Adults Protective Services Act (the "Act"), 35 P.S. § 10225.101, *et. seq.*,[2] provides for the creation of local agencies to investigate reports of abuse of persons 60 years and older and, if necessary, provide protective services to the victim and report the incident to law enforcement. The Act also contains provisions protecting the confidentiality of agency records and the identity of reporters of abuse. The parties already have received and reviewed various redacted records from Lancaster County Office of Aging ("Office"), which investigated Hershey's assault of the Decedent. Also, the parties deposed four employees of the Office under stipulation that the deponents not be asked to identify reporters of abuse or other persons who cooperated in the

---

[1] 18 Pa.C.S.A. § 3123(a)(5).

[2] 1987 Pa. Laws 381, as amended at 1996 Pa. Laws 1125 and 1997 Pa. Laws 160.

investigation. Plaintiffs now seek to depose one of Appellant's employees, Carrie Kneisley ("Kneisley"), and ask, among other things, what she told the Office. Appellant filed a motion for a protective order, arguing Kneisley's testimony is privileged under the Act. The trial court denied Appellant's motion and permitted the deposition to go forward under seal. Appellant filed this timely interlocutory appeal from that order pursuant to Pa.R.A.P. 313.[3]

Appellant argues the Act created a privilege that precludes plaintiffs from taking Kneisley's deposition. This is a matter of first impression. Interpretation of the Act presents a question of law. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd.*, 81 A.3d 830, 838 (Pa. 2013). Therefore, our standard of review is *de novo* and our scope of review is plenary. *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d 204, 215 (Pa. 2014). We observe that our law disfavors evidentiary privileges because "they operate in derogation of the search for truth." *Id.* (quoting *Commonwealth v. Stewart*, 690 A.2d 195, 197 (Pa. 1997)). Nonetheless,

_____

[3] "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). This Court commonly exercises jurisdiction over a collateral appeal involving an assertion of an evidentiary privilege. *Berkeyheiser v. A-Plus Investigations, Inc.*, 936 A.2d 1117, 1123-24 (Pa. Super. 2007). The parties do not dispute this point.

our courts will faithfully adhere to constitutional, statutory, or common law privileges.

> [W]here the legislature has considered the interests at stake and has granted protection to certain relationships or categories of information, the courts may not abrogate that protection on the basis of their own perception of public policy unless a clear basis for doing so exists in a statute, the common law, or constitutional principles. **Commonwealth v. Moore**, [] [584 A.2d 936, 940 (Pa. 1991)] ('[T]he general powers of the courts do not include the power to order disclosure of materials that the legislature has explicitly directed be kept confidential.').

**V.B.T. v. Family Servs. of W. Pennsylvania**, 705 A.2d 1325, 1335 (Pa. Super. 1998), *affirmed*, 728 A.2d 953 (Pa. 1999).

As this case involves statutory construction, we observe the following:

> If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. **See** 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). 'Relatedly, it is well established that resort to the rules of statutory construction is to be made only when there is an ambiguity in the provision.' **Oliver v. City of Pittsburgh**, 11 A.3d 960, 965 (Pa. 2011).

**Mohamed v. Commonwealth, Dep't of Transp., Bureau of Motor Vehicles**, 40 A.3d 1186, 1193 (Pa. 2012).

Several provisions in the Act protect persons who report abuse and protect the confidentiality of certain information. Section 302 provides, "Any person having reasonable cause to believe that an older adult is in need of protective services may report such information to the agency which is the local provider of protective services." 35 P.S. § 10225.302(a). Section

302(c) creates a civil remedy for any reporter of abuse who suffers retaliation for making the report. 35 P.S. § 10225.302(c). Section 302(c.1) provides a civil remedy for intimidation of anyone with sufficient knowledge to make a report. 35 P.S. § 10225.302(c.1). Most significantly, Section 302(d) provides, "Any person participating in the making of a report or who provides testimony in any administrative or judicial proceeding arising out of a report shall be immune from any civil or criminal liability on account of the report or testimony unless the person acted in bad faith or with malicious purpose." 35 P.S. § 10225.302(d). Thus, § 302(d) contemplates that judicial proceedings may arise out of reports of abuse, as has happened instantly. Section 302(d) protects persons who become witnesses in a judicial proceeding from criminal or civil liability based on their testimony, but unambiguously **does not preclude** their testimony.

Next, we turn to § 306 of the Act, titled "Confidentiality of records." 35 P.S. § 306:

> **(a) General rule.--**Information contained in reports, records of investigation, client assessment and service plans shall be considered confidential and shall be maintained under regulations promulgated by the department to safeguard confidentiality. Except as provided below, this information shall not be disclosed to anyone outside the agency other than to a court of competent jurisdiction or pursuant to a court order.
>
> **(b) Limited access to the agency's protective services records.--**
>
>     (1) In the event that an investigation by the agency results in a report of criminal conduct, law enforcement officials shall

have access to all relevant records maintained by the agency or the department.

(2) In arranging specific services to carry out service plans, the agency may disclose to appropriate service providers such information as may be necessary to initiate the delivery of services.

(3) A subject of a report made under section 302 may receive, upon written request, all information contained in the report except that prohibited from being disclosed by paragraph (4).

(4) The release of information that would identify the person who made a report of suspected abuse, neglect, exploitation or abandonment or person who cooperated in a subsequent investigation, is hereby prohibited unless the secretary can determine that such a release will not be detrimental to the safety of such person.

(5) When the department is involved in the hearing of an appeal by a subject of a report made under section 302, the appropriate department staff shall have access to all information in the report record relevant to the appeal.

(6) For the purposes of monitoring agency performance, appropriate staff of the department may access agency protective services records.

35 P.S. § 10225.306 (footnote omitted).

Appellant relies on § 306 to demonstrate that protecting the confidentiality of agency records and the identity of reporters of abuse is of "paramount concern" under the Act. Appellant's Brief at 14. Appellant is correct in asserting that § 306 circumscribes the availability of agency records. That section is of little or no relevance to this appeal, however, as

agency records are not at issue. Kneisley is not an agency[4] employee, nor is there any reason to believe she has the ability to disclose any agency records.

Appellant also relies on Chapter seven of the Act ("Reporting Suspected Abuse by Employees"). Chapter seven addresses "employee" reports of abuse of "recipients." 35 P.S. § 10225.701(a)(1). An "employee" is a person employed by a "facility." 35 P.S. § 10225.103 ("Employee"). A "facility" can be a nursing home or other care center. 35 P.S. § 10225.103 ("Facility"). A "recipient" is "[a]n individual who receives care, services or treatment in or from a facility." 35 P.S. § 10225.103 ("Recipient"). We will assume for purposes of analysis that Appellant's nursing home is a "facility," Kneisley is an "employee," and the Decedent was a "recipient," as those terms are defined in the Act.[5] Section 701 requires an employee to report suspected abuse of a recipient to the agency and potentially to law enforcement. 35 P.S. § 10225.701(a), (b). Section 705 governs the confidentiality of reports made under Chapter 7:

> **(a) General rule.--**Except as provided in subsection (b), a report under this chapter shall be confidential.

---

[4] An "agency" is a local provider of protective services, per the Act's definitions section. 35 P.S. § 10225.103 ("Agency").

[5] The trial court issued no findings on these issues and the parties do not address them. Our assumption for purposes of analysis creates no binding precedent on the matter.

**(b) Exceptions.--**A report under this chapter shall be made available to all of the following:

(1) An employee of the department or of an agency in the course of official duties in connection with responsibilities under this chapter.

(2) An employee of the Department of Health or the Department of Public Welfare in the course of official duties.

(3) An employee of an agency of another state which performs protective services similar to those under this chapter.

(4) A practitioner of the healing arts who is examining or treating a recipient and who suspects that the recipient is in need of protection under this chapter.

(5) The director, or an individual specifically designated in writing by the director, of any hospital or other medical institution where a victim is being treated if the director or designee suspects that the recipient is in need of protection under this chapter.

(6) A guardian of the recipient.

(7) A court of competent jurisdiction pursuant to a court order.

(8) The Attorney General.

(9) Law enforcement officials of any jurisdiction as long as the information is relevant in the course of investigating cases of abuse.

(10) A mandated reporter under Chapter 3 who made a report of suspected abuse. Information released under this paragraph shall be limited to the following:

(i) The final status of the report following the investigation.

(ii) Services provided or to be provided by the agency.

**(c) Excision of certain names.--**The name of the person suspected of committing the abuse shall be excised from a report made available under subsection (b)(4), (5) and (10).

**(d) Release of information to alleged perpetrator and victim.--**Upon written request, an alleged perpetrator and victim may receive a copy of all information except that prohibited from being disclosed by subsection (e).

**(e) Protecting identity of person making report.--**Except for reports to law enforcement officials, the release of data that would identify the individual who made a report under this chapter or an individual who cooperated in a subsequent investigation is prohibited. Law enforcement officials shall treat all reporting sources as confidential information.

35 P.S. § 10225.705.

Assuming § 705's applicability to Kneisley as an employee, Appellant as a facility, and the Decedent as recipient, the Act required Kneisley to report Hershey's abuse of the Decedent (if she had reasonable cause to suspect that abuse occurred, per § 701(a) and (b)) to the Office and to law enforcement. If Kneisley made such a report, § 705 protects the confidentiality of that report. Likewise, § 705(e) precludes the "release of data" that would identify the reporter. 35 P.S. § 10225.705(e). We conclude § 705 cannot support Appellant's argument because Plaintiffs are not seeking an agency report.

Notwithstanding the foregoing, Appellant argues Kinsley's deposition will constitute an impermissible "release of data" under § 705(e). Appellant argues that § 705(e) does not identify which entities or persons are prohibited from releasing data, and therefore that prohibition applies to

everybody. Appellant's Brief at 18. We find nothing in § 705(e) that prevents Kneisley from testifying in a civil action arising from the alleged abuse. As noted above, § 302(d) expressly contemplates that reporters of abuse and other persons who cooperate in an agency investigation will be called upon to testify in judicial proceedings. Nothing in § 705(e) precludes third parties such as Plaintiffs from gathering information by deposing an employee. In other words, § 705 does not render employees who cooperate in agency investigations incompetent to testify in subsequent judicial proceedings.

Finally, Appellant argues that Kneisley's deposition will violate the policy of the act, as set forth in § 102:

> It is declared the policy of the Commonwealth of Pennsylvania that older adults who lack the capacity to protect themselves and are at imminent risk of abuse, neglect, exploitation or abandonment shall have access to and be provided with services necessary to protect their health, safety and welfare. It is not the purpose of this act to place restrictions upon the personal liberty of incapacitated older adults, but this act should be liberally construed to assure the availability of protective services to all older adults in need of them. Such services shall safeguard the rights of incapacitated older adults while protecting them from abuse, neglect, exploitation and abandonment. It is the intent of the General Assembly to provide for the detection and reduction, correction or elimination of abuse, neglect, exploitation and abandonment, and to establish a program of protective services for older adults in need of them.

35 P.S. § 10225.102. Appellant argues the trial court's order will create among those who witness abuse a reluctance to come forward. This in turn, will deny protective services to those who need them and thereby violate

§ 102's mandate to construe the Act liberally to assure availability of protective services.

Appellant cites the Child Protective Services Law ("CPSL"), 23 Pa.C.S.A. § 6301, *et. seq.*, as construed in ***V.B.T.***, as an analogue. One purpose of the CPSL is to "[e]ncourage more complete reporting of suspected child abuse." 23 Pa.C.S.A. § 6302. In ***V.B.T.***, the plaintiff parents filed suit for the alleged sexual and physical abuse of their child by a foster child living in their neighborhood. ***V.B.T.***, 705 A.2d at 1327. The plaintiffs alleged, among other things, that the defendant agency was aware of the foster child's propensity to abuse other children and therefore was negligent in placing the foster child in a neighborhood with other young children. ***Id.*** The plaintiffs noticed a deposition for the purpose of exploring the agency's knowledge of the foster child's personal and family history, and the agency moved for a protective order. ***Id.*** at 1328. The trial court denied the agency's motion, reasoning that it would cripple the plaintiff's ability to prosecute their case against the agency. ***Id.*** at 1328-29. Significantly, neither party questioned "the trial court's finding that the matters of which the plaintiffs seek discovery fall within the ambit of privileges created by [the CPSL]." ***Id.*** at 1329. In other words, the trial court and the parties recognized the applicability of a statutory privilege. The agency contested the trial court's conclusion that the plaintiffs' interest

- 11 -

in prosecuting their negligence action outweighed the agency's interest in relying on its statutory privilege. *Id.*

This Court described the purposes of the CPSL's confidentiality provisions:

> [T]o encourage reporting of abuse by ensuring that persons with knowledge of abuse are not deterred from reporting it by the prospect of the abuser learning their identity and seeking retribution; to facilitate the investigation of abuse by assuring potential witnesses that the information they provide to investigators will not be made public; to facilitate the rehabilitation and treatment of abused children and their families by encouraging open, frank communications with agency personnel and treatment providers; to encourage the effective operation of the child protective service by enabling it to keep complete and comprehensive files on all aspects of a family's circumstances without fear that information placed in such files will be subject to scrutiny by persons not involved in the process of rehabilitating the family; and to prevent the innocent victims of abuse from also becoming victims of public stigma by guarding information about the intimate details of their lives from the prying eyes of outsiders.

*Id.* at 1335-36. We further concluded that the plaintiffs demonstrated no common law, statutory, or constitutional interest that outweighed the application of a clearly applicable statutory privilege. *Id.*

Two significant distinctions between *V.B.T.* and the instant case render the *V.B.T.* Court's analysis inapplicable here. First, the agency was a defendant. Second, the plaintiffs admittedly sought information protected by the CPSL's confidentiality provisions. Instantly, the Lancaster County Office of Aging is not a party, and we find nothing in the Act prohibiting a nursing home employee from testifying in a civil action. Appellant would

have us conclude that any person who reports abuse or cooperates in an agency's investigation of reported abuse of an older adult is disqualified from testifying in a subsequent judicial proceeding. Nothing in the Act supports Appellant's argument, and § 302(d) directly contradicts it. Appellant is not entitled to relief.

Based on all of the foregoing, we discern no error in the trial court's order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/22/2016