J-S71031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TOMBEV RESTAURANT SERVICES, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON | |
| APPEAL OF: PENNSYLVANIA STATE POLICE | No. 370 EDA 2016 |

Appeal from the Order Entered December 23, 2015
in the Court of Common Pleas of Bucks County Civil Division
at No(s): 2015-04040-37

BEFORE: BOWES, PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED JANUARY 27, 2017**

The Pennsylvania State Police ("PSP") appeals from the order of the Bucks County Court of Common Pleas directing PSP to disclose portions of a PSP trooper's report to the parties in a civil action. PSP claims the trial court erred in finding that PSP waived its claims by failing to object to the subpoena requesting the record and that the disclosure of the record would not violate the Criminal History Record Information Act[1] ("CHRIA"). We reverse.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 9101-9183.

On March 10, 2015, a fire damaged the Indian Rock Inn in Nockamixon Township, forcing the business to close. The Assistant Deputy Fire Marshal, PSP Trooper Scott A. LaBar, commenced an investigation.

Appellee, TomBev Restaurant Services, LLC ("Appellee"), owned the Indian Rock Inn and insured it with Certain Underwriters at Lloyd's of London ("Lloyd's"). On June 1, 2015, Appellee filed a complaint against Lloyd's for breach of contract and bad faith and sought over $350,000.00 in damages. Appellee alleged Lloyd's improperly refused to process Appellee's claim until PSP completed its investigation.

On July 2, 2015, Appellee served a subpoena on Trooper LaBar, requesting all records regarding the investigation of the fire. Trooper LaBar responded that he would not comply due to an ongoing investigation. On August 13, 2015, the trial court granted Appellee's motion to issue an order compelling an answer to its request. The order was served on Trooper LaBar, but the trooper failed to respond. Appellee filed a motion to hold Trooper LaBar and PSP in contempt.

On December 15, 2015, the trial court held a hearing at which it denied Appellee's contempt motion.[2] The court found that Appellee did not properly serve the records custodian of PSP and the trooper did not willfully refuse to respond to the court's order compelling an answer.

---

[2] Lloyd's counsel was present at the hearing but presented no arguments.

During a discussion regarding Appellee's request for the records, the following exchange between Appellee's counsel and the court occurred:

> [Appellee's Counsel]: We only, until yesterday, received some basic information from the other side, from [PSP's counsel], thankfully, but it's not enough. . . .
>
> THE COURT: Are you asking that they tell what the investigative process is?
>
> [Appellee's Counsel]: The process, what's suspected. If they think somebody in particular is a suspect, they can redact that. But we need to know where they are in their process, because Lloyds of London is telling us they're not going to do anything until they hear from the State Police. It's been since March.
>
> THE COURT: I understand that. I think I've already ruled on preliminary objections that basically said Lloyds of London doesn't have the right to take that position.
>
> [Appellee's Counsel]: Correct.
>
> THE COURT: So your civil case can move forward against the insurer regardless of what is or is not being done by the State police.
>
> [Appellee's Counsel]: Well, in part, Your Honor, but it's difficult to move forward against the insurer when their reason is they're waiting for the State Police. Both parties really need to know what's going on with the investigation, at least in general terms.
>
> THE COURT: Well, I don't see how your civil case is—Quite frankly, I don't see how [Lloyd's] can deny a claim or fail to process a claim just because somebody else is investigating. They have an . . . obligation under their policy to do whatever they have to do; they wrote the policy.
>
> [Appellee's Counsel]: I agree. However, the State Police must have information that we can both use for purposes of the trial.

- 3 -

N.T., 12/15/15, at 11-14.

Immediately following the denial of Appellee's contempt motion, PSP's counsel asserted PSP would not disclose the records without a court order. PSP's counsel averred an investigation was ongoing and in response to the court's questioning, claimed PSP was "close to the point of presenting [the report] to the District Attorney's office for further review and additional investigation at their request, or a prosecutorial determination." *Id.* at 20, 22. PSP's counsel claimed the records constituted investigative and intelligence information, which under CHRIA, could only be disseminated to a criminal justice agency. Appellee asserted it was entitled to PSP's report based on the court's prior order compelling an answer. Although PSP's counsel offered to discuss the matter further *in camera*, the court directed PSP to provide the record to the court under seal. PSP's counsel agreed and submitted a sealed record with a cover letter authored by counsel.

On December 23, 2015, the trial court issued the instant order requiring PSP to provide Appellee and Lloyd's with copies of the record submitted for *in camera* review. The court, however, determined PSP counsel's cover letter and one supplemental report were protected and not

subject to disclosure. Order, 12/28/15.[3] PSP timely appealed and complied with the court's order to submit a Pa.R.A.P. 1925(b) statement.

The trial court authored a Rule 1925(a) opinion, in which it suggested PSP waived all claims by failing to object to the July 2, 2015 subpoena served on Trooper LaBar. Trial Ct. Op, 3/9/16, at 5-6 (citing **McGovern v. Hosp. Serv. Ass'n of Northeastern Pa.**, 785 A.2d 1012 (Pa. Super. 2001)). In any event, the court opined only the cover letter and the supplemental report were not subject to disclosure, but CHRIA did not protect the remainder of the report. **Id.** at 7-8. The court, in relevant part, found the remainder of the report "strictly related to the property and its damage" and was subject to disclosure because the mere fact a record had some connection to a criminal proceeding did not mean it constituted "investigative material" under CHRIA. **See id.** at 7 (citing **Pa. State Police v. Grove**, 119 A.3d 1102, 1108 (Pa. Cmwlth. 2015), *appeal granted*, 133 A.3d 292 (2016)).

PSP presents the following questions for review:

> I. Did the trial court erroneously determine that [PSP] waived any objection to the subpoena by failing to file a timely objection pursuant to Pa.R.C.P. No. 4009.12?
>
> II. Does the trial court's order granting disclosure of [PSP's] investigative reports, in an active criminal investigation to a noncriminal justice agency, amount to

---

[3] The order was dated December 23, 2015, but was not entered until December 28, 2015.

dissemination of investigative material in violation of [CHRIA]?

PSP's Brief at 4.

As a threshold matter, we conclude that we have jurisdiction over this appeal under the collateral order doctrine.[4] ***See*** Pa.R.A.P 313. An appellate court's jurisdiction is generally limited to a review of final orders. ***See*** Pa.R.A.P. 341; ***Rae v. Pa. Funeral Directors Ass'n***, 977 A.2d 1121, 1124-25 (Pa. 2009). However, Rule 313 provides that an appeal may be taken as of right from a collateral order, that is, an order that is (1) "separable from and collateral to the main cause of action[,]" (2) "the right involved is too important to be denied review[,]" and (3) "the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(a)-(b); ***See Rae***, 977 A.2d at 1125.

The instant order involves a claim that an investigative record was not discoverable. ***See Rae***, 977 A.2d at 1126. The propriety of the order compelling PSP to disclose its record is separable from the main cause of action between Appellee and Lloyd's. ***Id.*** at 1125. A resolution of PSP's claims implicates important rights that are deeply rooted in public policy.

---

[4] This Court issued a rule to show cause why this appeal should not be quashed, which was discharged after PSP filed an answer asserting that the trial court's order to disclose the report was a collateral order under Pa.R.A.P. 313. PSP did not address the question of jurisdiction in its brief. Appellee, however, asserted in its brief that PSP failed to establish "irreparable loss of a claim if review were postponed until final judgment." Appellee's Brief at 14.

*Id.* at 1126. Moreover, the "disclosure of documents 'cannot be undone,' so that if review is postponed, the claim will be irreparably lost." *Id.* (citation omitted). Accordingly, we have jurisdiction to consider the issue in this appeal. *See id.* at 1125.

We summarize PSP's claims as follows. First, PSP asserts the trial court erred in suggesting PSP's failure to challenge the subpoena issued to Trooper LaBar resulted in waiver. Appellant's Brief at 9. PSP notes the court found the service of the subpoena on the trooper was not proper service on the records custodian for PSP and denied Appellee's contempt motion. *Id.* at 9-10. PSP contends that under the circumstances, *McGovern* did not support the court's finding of waiver. *Id.* at 10-11.

Second, PSP asserts the trial court erred in rejecting its CHRIA claim. *Id.* at 13. PSP contends, "Pennsylvania Courts have . . . held that the statutory language of CHRIA strictly prohibits dissemination of investigative information to persons not falling within the statutory definition of a criminal justice agency." *Id.* at 14. In support of its claim that CHRIA excludes the entire record as investigative information, PSP relies on *Dept. of Auditor General v. Pa. State Police*, 844 A.2d 78 (Pa. Cmwlth. 2004). PSP suggests the court erred by focusing on whether the nature of the information in the report made the report disclosable. Appellant's Brief at 16. It contends the determinative question is whether the report was created and retained due to an inquiry into a criminal incident or an

allegation of wrongdoing. *Id.* at 16. PSP acknowledges the Commonwealth Court's decision in *Grove*. *Id.* at 17. PSP asserts *Grove* is distinguishable because the instant report contains "the step by step narrative of the PSP investigation and all of the systematic steps taken by the PSP, including the steps to determine the causation of the fire[,]" as well as witness statements. *Id.* at 18-19.

Appellee first responds that the question of waiver due to PSP's failure to object to the subpoena "is moot." Appellee's Brief at 13. Appellee next asserts that the discovery order "flowed directly from [a] voluntary, knowing full[y] competent agreement between the parties," which included Appellee's concession that the disclosure should not include "'identifiable descriptions' or identifiable information about particular people under investigation." *Id.* at 12. Appellee notes the contested report has not been disclosed to it and PSP did not submit an affidavit seeking a protective order. Nevertheless, Appellee suggests the trial court did not abuse its discretion when ordering disclosure. *Id.* at 16-17.

For the reasons set forth below, we agree with PSP that its failure to challenge the subpoena did not waive its claim. Moreover, we find *Grove* does not support the trial court's conclusion that the report was not investigative information. Lastly, we conclude the court's order cannot be sustained under an analysis of a common law privilege. Thus, PSP is entitled to relief.

As to the trial court's finding of waiver, it is well settled that the failure to timely object to a subpoena need not automatically result in the waiver of a claim of privilege. *See McGovern*, 785 A.2d at 1019. Instantly, the trial court properly found a PSP's legal records custodian was not served with the subpoena. *See Commonwealth v. Friday*, 90 A.2d 856, 860 (Pa. Super. 1952) (noting "[t]he executive head of the State Police, the Commissioner of the State Police, is the legal custodian of [PSP] records"). PSP raised its claim at the first opportunity following the trial court's denial of Appellee's request for sanctions. Moreover, in an attempt to expedite the discovery process, the court denied PSP's request for further "discussion" and directed PSP to submit the report for the court's independent review. Under these circumstances, we conclude waiver is not appropriate, and we will review the court's rulings on the issue of disclosure. *See McGovern*, 785 A.2d at 1019.

This Court has stated:

> Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. An [a]buse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will.

*Sabol v. Allied Glove Corp.*, 37 A.3d 1198, 1200-01 (Pa. Super. 2011) (citations and quotation marks omitted).

"Pa.R.C.P. 4003.1 permits 'discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . .' *Commonwealth v. Kauffman*, 605 A.2d 1243, 1246 (Pa. Super. 1992) (quotation marks omitted). "Discovery itself is designed to promote free sharing of information so as to narrow the issues and limit unfair surprise. It is a tool which serves each litigant and promotes judicial economy." *Id.* at 1245 (citation omitted).

"CHRIA concerns the collection, maintenance, dissemination and receipt of criminal history record information." *Mitchell v. Office of Open Records*, 997 A.2d 1262, 1265 (Pa. Cmwlth. 2010). CHRIA applies "to persons within this Commonwealth and to any agency of the Commonwealth or its political subdivisions which collects, maintains, disseminates or receives criminal history information." 18 Pa.C.S. § 9103.

CHRIA's definition of criminal history information excludes investigative information, the latter of which is defined as follows:

> **"Investigative information."** Information assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information.

*Id.* § 9102.

Section 9106(c), entitled "Dissemination of protected information" provides in relevant part:

> Investigative and treatment information shall not be disseminated to any department, agency or individual

- 10 -

> unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic.

*Id.* § 9106(c)(4). "Dissemination" for the purposes of CHRIA means "[t]he oral or written transmission or disclosure of criminal history record information to individuals or agencies other than the criminal justice agency which maintains the information." *Id.* § 9102.

In *Grove*, the requester submitted a Right to Know Law[5] ("RTKL") request to PSP seeking copies of a police report, as well as any audio and video recordings taken at the location of a motor vehicle accident. *Grove*, 119 A.3d at 1104. PSP responded by providing the requester with a Public Information Release Report, but withholding the other records. *Id.* at 1104-05. PSP claimed, in relevant part, that the records it withheld were criminal investigative records exempt from disclosure under the RTKL. *Id.* at 1105. The requester appealed to the Office of Open Records, which, in turn, directed PSP to provide the requester with recordings. *Id.* PSP appealed to the Commonwealth Court and argued the video recordings were exempt as investigative records under the RTKL, as well as CHRIA. *Id.*

---

[5] 65 P.S. §§ 67.101-67.3104. The RTKL provides for the disclosure of public records. However, "[a] record of an agency relating to or resulting in a criminal investigation" is exempted from disclosure. 65 Pa.C.S. § 67.708(b)(16).

On appeal, in **Grove**, PSP submitted an affidavit indicating the recordings at issue were mobile vehicle recordings ("MVRs") from equipment on the vehicles of the two PSP troopers who responded to the scene of the accident. **Id.** at 1106. The MVRs were activated when the troopers activated their emergency lights or siren. **Id.** The first trooper's MVR showed the trooper speaking to the drivers involved in the accident and directing one of the drivers to move his vehicle, but did not contain an audio recording. **Id.** The second trooper's MVR contained audio and visual components and recorded the trooper's interviews of the two drivers and bystanders. **Id.**

The **Grove** Court initially rejected PSP's arguments that the MVRs were investigative records because at least one of the troopers investigated the accident and the accident resulted in the issuance of traffic citations. **Id.** at 1108. The Court noted:

> The mere fact that a record has some connection to a criminal proceeding does not automatically exempt it under Section 708(b)(16) of the RTKL or CHRIA. The types of records that we have held protected from RTKL disclosure under Section 708(b)(16) and CHRIA as investigative are records created to report on a criminal investigation or set forth or document evidence in a criminal investigation or steps carried out in a criminal investigation.

**Id.** (citations omitted). The Court determined the MVRs were "created to document troopers' performance of their duties in responding to emergencies and in their interactions with members of the public, not merely

- 12 -

or primarily to document, assemble or report of evidence of a crime or possible crime." ***Id.*** The Court concluded, "[T]he MVRs themselves are therefore not investigative material or videos, investigative information, or records relating or resulting in a criminal investigation . . . ." ***Id.***

The ***Grove*** Court proceeded to examine alleged contents of the MVRs to determine whether they contained investigative materials that could be redacted. ***Id.*** at 1109. The Court determined audio recordings of witness interviews were investigative materials, which would be subject to redaction under the RTKL and CHRIA. ***Id.*** at 1110. Although the Court concluded other portions of the other MVR was not investigatory, it noted "PSP d[id] not contend that th[e] MVR shows any measurements, collection of evidence, physical inspection or analysis of what the accident scene showed." ***Id.*** at 1109.

Instantly, the report that was submitted under seal by the PSP is precisely the type of material the Commonwealth Court indicated is investigative. ***See id.*** at 1109-10. As the ***Grove*** Court, noted the RTKL and CHRIA protect "records created to report on a criminal investigation or set forth or document evidence in a criminal investigation or steps carried out in a criminal investigation." ***Id.*** at 1108 (citations omitted). Unlike the MVRs in ***Grove***, the report here was created for an investigation, contained witness interviews, and summarized facts collected during the investigation.

*See id.* at 1110.   Therefore, the trial court's analysis and application of

CHRIA as a basis for compelling disclosure cannot stand.

PSP's reliance on CHRIA's prohibition on disclosure raises a separate

question, namely, whether CHRIA creates evidentiary privilege during a

discovery proceeding in which PSP is not a party.

This Court has stated:

> [O]ur law disfavors evidentiary privileges because "they
> operate in derogation of the search for truth."
> Nonetheless, our courts will faithfully adhere to
> constitutional, statutory, or common law privileges.
>
> > [W]here the legislature has considered the interests
> > at stake and has granted protection to certain
> > relationships or categories of information, the courts
> > may not abrogate that protection on the basis of
> > their own perception of public policy unless a clear
> > basis for doing so exists in a statute, the common
> > law, or constitutional principles.

*McLaughlin v. Garden Spot Village*, 144 A.3d 950, 953 (Pa. Super. 2016)

(citations omitted).

CHRIA, like the RTKL, provides for disclosure of records, but protects

investigative information from disclosure or dissemination.  *See Grove*, 119

A.3d at 1108.  However, the General Assembly's intent to withhold certain

information from the public domain alone does not create an evidentiary

privilege.   *See Ben v. Schwartz*, 729 A.2d 547, 553-54 (Pa. 1999)

(asserting the RTKL is not applicable to discovery proceedings under the

Pennsylvania Rules of Civil Procedure); *McLaughlin* 144 A.3d at 953

(discussing whether Older Adults Protective Services Act, 35 P.S. §§

10225.101-10225.5102 gives rise to an privilege); **Kauffman**, at 605 A.2d at 1246 (noting, with respect to RTKL, that "the fact that the legislature excluded certain documents from public inspection does not mean that the legislature intended to bar the use of such information in judicial proceedings.").

Although CHRIA contains administrative and civil penalties for disclosures against its provisions, its status as an absolute privilege under the circumstances of the instant case is not entirely clear. Therefore, because we may affirm on any basis, and in an abundance of caution, we address whether the trial court's order compelling disclosure comported with a common law privilege.[6]

The Pennsylvania Supreme Court has recognized:

> [F]ederal courts, on occasion, have identified a common law "executive" or "governmental" privilege which they have relied upon to protect information from being discovered during ongoing government investigations. Thus, . . . the federal court for the eastern district of Pennsylvania defined the "executive privilege" as "the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest." This privilege, however, is not absolute but qualified; and when asserted, requires the court to balance the government's interest in ensuring the secrecy of the documents whose discovery is sought against the need of the private litigant to obtain discovery of relevant materials in possession of the government.

---

[6] Although PSP arguably waived a claim based on a common law privilege, we reiterate that the process leading to the resolution of PSP's claims for non-disclosure was expedited.

**Ben**, 729 A.2d at 553.

As the Commonwealth Court further suggested:

> To support a claim for the [executive] privilege, at least three requirements must be fulfilled. . . . "The head of the agency claiming the privilege must personally review the material, there must be a 'specific designation and description of the documents claimed to be privileged,' and there must be 'precise and certain reasons for preserving' the confidentiality of the communications.  Usually such claims must be made by affidavit.[ ]"

> \*    \*    \*

> In considering [a claim of executive privilege], we are guided by the District Court's decision in **Frankenhauser v. Rizzo**, [59 F.R.D. 339 (E.D. Pa. 1973),] which identified ten factors that federal courts consider when balancing the interests of the government in ensuring the secrecy of documents against the need of a private party to obtain discovery:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

> (2) the impact upon persons who have given information of having their identities disclosed;

> (3) the degree to which governmental self-evaluation and consequent program involvement will be chilled by disclosure;

> (4) whether the information sought is factual data or evaluative summary;

> (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) whether the police investigation has been completed;

(7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation;

(8) whether the Petitioner's suit is non-frivolous and brought in good faith;

(9) whether the information sought is available through other discovery or from other sources; and

(10) the importance of the information sought to the Petitioner's case.

*Frankenhauser*, 59 F.R.D. at 344.

*See Van Hine v. Dept. of State of Com.*, 856 A.2d 204, 208-10 (Pa. Cmwlth. 2004) (some citations omitted).

Instantly, the trial court suggested:

[Appellee] is seeking the records to establish the status of its damaged property at the time the damage occurred and the origin of the fire that destroyed it. The records that have been ordered to be disclosed to [Appellee] strictly relate to the property and its damage. When the undersigned conducted *in camera* review, two documents were identified that relate to the alleged ongoing criminal investigation. Despite the fact that we could have held that the PSP had waived any objection to those documents, we exempted them from disclosure. The remaining documents that were found discoverable do not amount to "investigative material."

\* \* \*

Here, the documents to be disclosed are relevant. They relate directly to a property that was damaged in a fire. The property belongs to [Appellee] and is insured by Certain Underwriters. [Appellee] is engaged in a lawsuit with Certain Underwriters to recover the proceeds of a

> commercial property insurance policy that applied to the property. [T]hese documents share the same subject matter with the underlying lawsuit.
>
> [W]e determined with sound discretion that the documents to be disclosed logically tend to establish a material fact in the case or tends to make a fact at issue more or less probable.

Trial Ct. Op. at 8-9.

The trial court's findings that the portions of the record, which it ordered disclosed, strictly relate to the property and its damage lacks support. Even if the record contained factual data, the report constitutes an evaluative summary. Additionally, PSP's counsel asserted that an investigation was ongoing and PSP was "close to the point of" presenting its report to the District Attorney. N.T. at 20, 22. These factors weigh in favor of nondisclosure.

Moreover, although the trial court suggested the information contained in the report was relevant to Appellee's action against Lloyd's, that analysis falls short of a determination that the report was important or unavailable to Appellee through other means. To the contrary, the court indicated that it overruled Lloyd's preliminary objections to Appellee's complaint because Lloyd's did not "have the right to" assert that it would not process Appellee's claim until they received the PSP report. *See id.* at 12-13. Thus, we cannot conclude that Appellee's private interest in the disclosure of the report outweighs PSP's interests in nondisclosure.

In sum, we have reviewed the application of the statutory and common law principles at issue in this appeal and discern no basis to affirm the trial court's order to compel PSP's disclosure of the report.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2017