J-A26002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LESLIE L. VAN EVERY, INDIVIDUALLY, AND AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID E. VAN EVERY, PLAINTIFF | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| STEPAN AMBROZYAK, KLM EXPRESS, INC., AND STEPHANIE J. KAUFFMAN, DEFENDANTS | |
| v. | |
| CARGO TRANSPORTERS, INC., ABF FREIGHT SYSTEMS, INC., DAVID L. PERRY, PATRICK J. ANDERSON, FFE TRANSPORTATION SERVICES, INC. AND JOHN DOE, ADDITIONAL DEFENDANTS | |
| APPEAL OF:  FFE TRANSPORTATION SERVICES, INC. | No. 797 MDA 2017 |

Appeal from the Order Entered April 12, 2017
In the Court of Common Pleas of Cumberland County
Civil Division at No(s):
2014-01630
2015-06112
2016-00398
2016-00555
2016-00577
2016-00617

BEFORE:  BOWES, OLSON, AND RANSOM, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 20, 2018**

FFE Transportation Services, Inc. ("FFE") appeals from the discovery

order compelling it to produce certain documents requested by plaintiff

Leslie L. Van Every ("Van Every"), individually, and as the personal representative of the Estate of David E. Van Every, which FFE claims are privileged.[1, 2] We reverse and remand.

This consolidated action stems from the filing of several lawsuits concerning a multi-vehicle accident which occurred on February 4, 2014, on Interstate 76 (the Pennsylvania Turnpike) in Cumberland County, Pennsylvania. Van Every's husband, David E. Van Every, died as a result of injuries sustained in the accident. Van Every filed her complaint against FFE on November 5, 2015. FFE retained the law firm of Pion, Nerone, Girman, Winslow & Smith, P.C. ("Pion") to handle its defense in the matter.

In Van Every's amended complaint, she alleges that an FFE tractor-trailer driven by an unidentified FFE employee blocked lanes of traffic on Interstate 76, causing the multi-vehicle accident. In its answer, FFE averred that one of its drivers may have been operating a tractor-trailer on

_____

[1] The remaining captioned-defendants are not parties to this appeal.

[2] When a discovery order requires the production of materials that the appealing party has asserted are privileged, Pa.R.A.P. 313 applies, and we will accept jurisdiction. **See Yocabet v. UPMC Presbyterian**, 119 A.3d 1012, 1016 n.1 (Pa.Super. 2015); **see also** Pa.R.A.P. 313 (providing that an appeal may be taken as of right from a collateral order "where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.").

Interstate 76 near the location of the accident, but was unable to confirm this fact.

During discovery, Van Every served FFE with written discovery requests, including the following requests for the production of documents:

> 53.   Any and all documents pertaining to the investigation conducted by FFE . . . to identify the driver of the subject FFE tractor and semi-trailer.
>
> 54.   Any and all documents pertaining to the investigation conducted by FFE . . . to identify the subject FFE tractor and semi-trailer.

Amended Complaint, ¶¶ 53, 54.  In response, FFE objected to the production of any privileged document, produced a privilege log wherein it identified fifty-four withheld documents, and asserted that each document was protected by the attorney-client privilege and/or the attorney work product doctrine.

Van Every filed a motion to compel FFE to produce the withheld documents or, in the alternative, for the court to conduct an *in camera* review.  Following briefing on the matter, the trial court ordered FFE to produce the withheld documents for an *in camera* inspection.  On April 12, 2017, the trial court determined that thirteen of the fifty-four documents were privileged, and ordered FFE to produce the remaining forty-one documents, which it found to be non-privileged.  This timely appeal followed.

Subsequent to the filing of its notice of appeal, FFE produced thirty-four of the forty-one documents ordered for production by the trial court.

FFE continues to withhold from production seven documents, Nos. 36-40 and 50-51. The seven documents consist of emails between a representative of FFE and members of the Pion law firm, regarding their joint investigation of the identity of the driver and tractor-trailer involved in the accident.

On appeal, FFE raises the following issue for our review: "Whether the trial court committed an error of law in compelling FFE to produce documents protected by the attorney-client privilege and which are not subject to any of the limited exceptions to disclosure?"[3] Appellant's brief at 5.

Whether the attorney-client privilege protects a particular communication is a question of law. *See Clemens v. NCAA (In re Estate of Paterno)*, 168 A.3d 187, 194 (Pa.Super. 2017). Accordingly, our standard of review is *de novo* and our scope of review is plenary. *Id*.

The attorney-client privilege was derived from the common law, and later codified at 42 Pa.C.S. § 5928, which states: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled

---

[3] In its privilege log, FFE asserted that documents Nos. 36-40 and 50-51 were protected by *both* the attorney-client privilege and the attorney work product doctrine. As FFE has abandoned its claim that the subject documents are protected by the work product doctrine, that argument is not before us. Nevertheless, Van Every devotes much of her brief to her argument that the subject documents are not protected by the attorney work product doctrine.

to disclose the same, unless in either case this privilege is waived upon the trial by the client." We also note that Pennsylvania law disfavors evidentiary privileges because they are in derogation of the truth. *See Red Vision Sys., Inc. v. Nat'l Real Estate Info. Servs., L.P.*, 108 A.3d 54, 61 (Pa.Super. 2015). Nonetheless, we "faithfully adhere to constitutional, statutory, or common law privileges." *McLaughlin v. Garden Spot Vill.*, 144 A.3d 950, 953 (Pa.Super. 2016). This court does not have the power to "order disclosure of materials that the legislature has explicitly directed be kept confidential." *Id*. (citation omitted).

"[I]n Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011). "The attorney-client privilege is intended to foster candid communications between counsel and client, so that counsel may provide legal advice based upon the most complete information from the client." *Yocabet*, *supra*, at 1027 (citation omitted). Since the purpose of the attorney-client privilege is to create an atmosphere that will encourage confidence and dialogue between attorney and client, the privilege is founded upon a policy extrinsic to the protection of the fact-finding process. *Id*.

The party asserting privilege bears the burden of producing facts establishing proper invocation of the privilege. *See Yocabet*, *supra*, at

1019. For a party to invoke the privilege, the following elements must be established:

    1) The asserted holder of the privilege is or sought to become a client.

    2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

    3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

    4) The privilege has been claimed and is not waived by the client.

*Id*. at 1027 (citation omitted). When the client is a corporation, the privilege extends to communications between its attorneys and the agents or employees of the corporation authorized to act on its behalf. *See Brown v. Greyhound Lines, Inc.*, 142 A.3d 1, 9 (Pa.Super. 2016). In determining whether a communication by a client to someone other than his attorney is covered by the attorney-client privilege, courts have held that, as long as the recipient of the information is an agent of the attorney and the statement is made in confidence for the purpose of facilitating legal advice, it is privileged. *See Farrell v. Regola*, 150 A.3d 87, 100 (Pa.Super. 2016); *see also* Restatement (Third) of the Law Governing Lawyers § 70 (2000) (providing that "privileged persons" include the client, the attorneys, and

any of their agents that help facilitate attorney-client communications or the legal representation.).

However, the protection of the privilege extends only to *communications* and not to facts. ***See Upjohn Co. v. United States***, 449 U.S. 383, 395-96 (1981). As explained by the High Court,

> A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

***Id***. (citing ***Philadelphia v. Westinghouse Electric Corp.***, 205 F.Supp. 830, 831 (ED Pa. 1962)).

The trial court determines whether the facts support the asserted privilege. ***See Law Office of Douglas T. Harris v. Phila. Waterfront Partners, LP***, 957 A.2d 1223, 1231 (Pa.Super. 2008) (citing 8 Wigmore, Evidence, § 2322 (McNaughton rev. 1961)). "Once the invoking party has made the appropriate proffer, then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies." ***Id.***

Turning to the communications at issue herein, FFE contends that, after it was named as a defendant in the action, its defense counsel, Pion, directed FFE to undertake an investigation as to the identity of the driver

and the tractor-trailer involved in the accident. Pion also participated in the investigation. FFE claims that this investigation is the subject of the seven withheld documents, which consist of email communications between FFE and attorneys, paralegals and staff of Pion, or among attorneys and paralegals of Pion.

FFE contends that it has established that the attorney-client privilege applies to the emails because (1) FFE is the client of Pion; (2) the communications were made after the commencement of Van Every's litigation against FFE; (3) the communications are between representatives of FFE and attorneys, paralegals and staff of Pion, or among attorneys and paralegals of Pion; (4) the communications relate to the investigation being performed by FFE and Pion to identify the driver and tractor-trailer at the scene of the accident; and (4) there has been no waiver of the privilege because the emails were not shared with any third party.

Each of the seven documents that FFE has withheld from production consist of a printout from the email account of an attorney at Pion. Document Nos. 36-40 and 51 each consist of a string of emails. Document No. 50 consists of a single email. Several of the documents involve the same or substantially similar email chains. In its privilege log, FFE described the withheld documents as follows:

Document No. 36: "9/20/16. Email string between Mark Rhea (FFE), Sandee Starks (FFE), John Pion, Ashley Travis (Pion paralegal), Tina Paluti

(Pion paralegal) and Pion admin. staff re. discussion of investigation into identity of driver."[4]  Privilege log at 3.

Document No. 37:  "9/20/16.  Email from Ashley Travis (Pion paralegal) to John Pion and Tina Paluti (Pion paralegal) re: discussion of investigation into identity of driver (includes entire email string contained in Doc. #36)."  *Id*.

Document No. 38:  "9/20/16.  Email string between John Pion, Sandee Starks (FFE), Ashley Travis (Pion paralegal), Tina Paluti (Pion paralegal), and Pion admin. staff re: discussion of investigation into identity of driver (includes entire email string contained in Doc. # 37)."  *Id*.

Document No. 39:  "9/22/16.  Email string between John Pion, Sandee Starks (FFE), Mark Rhea (FFE), Ashley Travis (Pion paralegal), Tina Paluti (Pion paralegal), and Pion admin. staff re: discussion of investigation into identity of driver."[5]  *Id*.

Document No. 40:  "9/27/16.  Email string between John Pion, Sandee Starks (FFE), and Ashley Travis (Pion paralegal) re: discussion of

---

[4] The first email in the string, sent by Mark Rhea (FFE) to Sandee Starks (FFE), is dated September 20, 2016.  FFE claims that it produced this email to Van Every.  *See* Appellant's brief at 18 n.6, 21.

[5] The first email in this string, sent by Mark Rhea (FFE) to Sandee Starks (FFE), is dated September 21, 2016.  FFE claims that it produced this email to Van Every.  *See* Appellant's brief at 18 n.6, 22.

investigation into identity of driver (includes entire email string contained in Doc. # 39)." *Id*.

Document No. 50. "12/14/16. Email from Sandee Starks (FFE) to John Pion and Bradley Sprout re: discussion of investigation into identity of driver. Includes as an attachment a spreadsheet compiled by FFE as part of investigation of identity of driver."[6] *Id*. at 4.

Document No. 51. "12/14/16. Email from John Pion to Sandee Starks (FFE), Bradley Sprout, and Pion admin. staff re: discussion of investigation into identity of driver (includes emails contained in Doc. #50)." *Id*.

Based on our *in camera* review of the seven withheld documents, we conclude that the communications contained therein are protected by the attorney-client privilege, and therefore subject to non-disclosure. FFE is a client of the Pion law firm. Each of the email communications was exchanged between FFE employees and Pion attorneys, paralegals and administrative staff. The email communications relate to facts which the attorneys were informed of by FFE, without the presence of strangers, for the purpose of securing assistance in a pending legal matter, and not for the

---

[6] Document No. 50 includes a list of the FFE dispatchers working on the date of the accident. FFE asserts that it provided this list to Van Every. **See** Appellant' brief at 20, 21, 22. The spreadsheet attached to Document No. 50 contains a list of the tractor-trailers that entered the Pennsylvania Turnpike on the date of the accident. FFE claims that it produced the spreadsheet to Van Every. **See** Appellant's brief at 18 n.6, 21, 22.

purpose of committing a crime or tort. Finally, the privilege was timely invoked, and not waived.

Bearing in mind that any "facts" pertaining to the accident included within those communications are not protected, and therefore subject to disclosure, we point out that FFE has produced to Van Every the email exchanges between Sandee Starks and Mark Rhea dated September 20, 2016 and September 21, 2016, which provided factual information pertaining to the investigation. Additionally, FFE produced to Van Every the list of FFE dispatchers included in Document Nos. 50 and 51, and the spreadsheet of tractor-trailers attached to document No. 50. No additional facts relative to the accident are contained in any of the remaining emails.

While Van Every claims that FFE must disclose *all* communications regarding such facts, this is simply not the law of Pennsylvania. The attorney-client privilege attaches to communications between an attorney and a client in preparation for litigation *even if the discussion in the interview concerns merely factual events*. **See Gould v. City of Aliquippa**, 750 A.2d 934, 938 (Pa.Cmwlth. 2000) (noting that the Pennsylvania Rules of Civil Procedure provide ample methods, such as depositions and

interrogatories, by which litigants may properly discover available facts).[7] Thus, we are satisfied that FFE has fulfilled its factual disclosure obligations.

As FFE established that document Nos. 36-40 and 50-51 are protected by the attorney-client privilege, the burden shifted to Van Every to prove that FFE waived the privilege, or that an exception applies. In this regard, Van Every alternatively contends that, if the documents are deemed privileged, FFE waived the privilege by "voluntarily" producing thirty-four of the forty-one documents subject to the trial court's order compelling production. Van Every points to the privilege log, and argues that the subject matter description of the thirty-four produced documents is the same or similar to the description of document Nos. 36-40, and 50-51. Citing **United States v. Keystone Sanitation Co., Inc.**, 885 F.Supp 672 (M.D. Pa. 1994),[8] Van Every claims that disclosure of privileged information relating to a particular subject matter operates as a waiver of privilege as to other confidential communications relating to the same subject matter.

_____

[7] Although decisions by the Commonwealth Court are not binding on this Court, they may be persuasive. **See Estate of Brown**, 30 A.3d 1200, 1204 n.2 (Pa.Super. 2011).

[8] The only relevant authority cited by Van Every is non-binding federal authority. **See Eckman v. Erie Ins. Exchange**, 21 A.3d 1203, 1207 (Pa.Super. 2011) (stating that we are not bound by federal court decisions, other than the United States Supreme Court).

We are not persuaded by Van Every's argument, given the circumstances of FFE's production. FFE produced the thirty-four documents pursuant to a court order *compelling* the production of those documents. Thus, the production was not "voluntary," and did not operate as a waiver of the attorney-client privilege as to document Nos. 36-40 and 50-51.

For the foregoing reasons, we conclude that document Nos. 36-40 and 50-51 are protected from disclosure by the attorney-client privilege, and the trial court erred in compelling FFE to produce them.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/20/18