J-A13007-23

2023 PA Super 166

| | | |
|---|---|---|
| JANE BETZ, EXECUTRIX OF THE ESTATE OF RICHARD M. BETZ, AND IN HER OWN RIGHT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| UPMC PINNACLE WEST SHORE HOSPITAL T/A; D/B/A UPMC PINNACLE HOSPITAL, STEVEN DELUCA, D.O., DEVIN OLSON, D.O., DANIEL SUMKO, D.O., TODD C. SCHAEFFER, D.O., BRENNA HOUSER, CRNA, AND RICHARD G. EVANS, D.O. | : | |
| | : | |
| APPEAL OF: UPMC PINNACLE WEST SHORE HOSPITAL | : | No. 1123 MDA 2022 |

Appeal from the Order Entered July 19, 2022
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2020-05740

BEFORE: BOWES, J., LAZARUS, J., and STEVENS, P.J.E.*

OPINION BY BOWES, J.: **FILED SEPTEMBER 14, 2023**

UPMC Pinnacle West Shore Hospital ("the Hospital") appeals from the order that granted the motion of Jane Betz ("Plaintiff"), directing the Hospital to take reasonable efforts to identify the author of an anonymous report concerning the care and death of Richard M. Betz ("Decedent") at the Hospital. Specifically, the Hospital contends that the trial court erred in so doing because ascertaining the identity of the reporter would violate the whistleblower protections of the Medical Care Availability and Reduction of

_____

* Former Justice specially assigned to the Superior Court.

Error ("MCARE") Act, 40 P.S. §§ 1303.101-1303.910.[1]  As we find no error in the trial court's interpretation and application of the pertinent statutes, we affirm.

Since the issue in this appeal is collateral to Plaintiff's claims against the Hospital and individuals who provided care to Decedent there (collectively "Defendants"), we need not recount the facts of the underlying action in detail. Briefly, Decedent died following elective knee surgery performed at the Hospital in June 2020.  Plaintiff filed a complaint stating wrongful death and survival claims, alleging that Defendants' negligence caused Decedent's death.  Defendants denied that their treatment deviated from the standard of care or that they caused Decedent's death.

During the course of discovery, the Hospital produced four incident reports made in connection with Decedent's treatment.  Pertinent to this appeal, event report EV20201798812 ("the anonymous report") had been submitted anonymously through the Hospital's online portal in accordance with its MCARE Act patient safety plan.  That report stated as follows:

> Patient was given 6 x 0.5 mg of hydromorphone and 4 mg of morphine post-op in the PACU [Post-Anesthesia Care Unit].  Based on chart documentation, the patient was desatting [incurring decreasing oxygen levels] from the narcotics and required 3L NC [three liters of oxygen by nasal cannula].  The patient was then

_____

[1] This Court has jurisdiction over these appeals because they are from collateral orders that are immediately appealable pursuant to Pa.R.A.P. 313. **See**, **e.g.**, **Farrell v. Regola**, 150 A.3d 87, 95 (Pa.Super. 2016) ("When a party is ordered to produce materials purportedly subject to a privilege, we have jurisdiction under Pa.R.A.P. 313." (cleaned up)).

transferred from the PACU to WS4 without any bedside handoff to the floor RN. Floor RN found the patient unresponsive and pulseless, and a code blue was activated. After a few days in the ICU the patient was found to have anoxic brain injury due to his cardiac arrest. Care was withdrawn and the patient died during the admission.

Trial Court Opinion, 9/7/22, at 8 (quoting Response to Motion to Compel, 6/14/22, at Exhibit B (bracketed information added by trial court)).

In addition to the depositions of Decedent's health care providers at the Hospital, Plaintiff requested to depose the authors of all four reports. Defendants produced the three named authors and known individuals with first-hand information about Decedent's treatment at the Hospital. However, Defendants asserted that the MCARE Act precluded the disclosure of the anonymous reporter. Plaintiff moved to compel the deposition, prompting a hearing before a discovery master. There, the Hospital represented, and Plaintiff accepted, that the identity of the author of the anonymous report was unknown at that time. Yet, "it was not represented that such information could not be extracted from the [H]ospital's reporting system." *Id*.

Ultimately, the trial court entered an order granting relief as recommended by the discovery master:

AND NOW, . . . [Plaintiff's motion to compel] is granted to the extent that [the] Hospital is directed to perform a reasonable search of the system utilized by the author of [the anonymous report] with a view toward determining the identity of the reporter, and to serve a verified report of the result of that search upon Plaintiff's counsel within 45 days of the date of this order.

NOTHING IN THIS ORDER is intended to require the defendant to perform an investigation beyond a review of the system (including an examination of metadata associated with the report).

*Id*. (quoting Order, 7/19/22, at 1).

The Hospital timely appealed, and both it and the trial court complied with Pa.R.A.P. 1925.[2]  The Hospital presents the following question for our determination:  "Whether the trial court erred in concluding the whistleblower protections of [§] 308 of the MCARE Act did not protect the anonymity of the author of a confidential serious event report from disclosure in response to civil discovery."  Hospital's brief at 3.

We begin with the general legal principles that guide our review.  "The issue of whether materials are privileged is a question of law."  *Meyer-Chatfield Corp. v. Bank Fin. Servs. Grp.*, 143 A.3d 930, 937 (Pa.Super. 2016).  Therefore, this Court conducts a *de novo*, plenary review.  *Id*.  To the extent that our review entails statutory interpretation, it also implicates questions of law subject to *de novo*, plenary review.  *See*, *e.g.*, *Commonwealth v. Chesapeake Energy Corp.*, 247 A.3d 934, 942 (Pa. 2021).  "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."  1 Pa.C.S.

---

[2] Initially, the Hospital requested that the trial court amend the July 19, 2022 order to add language to allow an appeal by permission pursuant to 42 Pa.C.S. § 702(b), and the trial court declined.  However, as noted above, we nonetheless have jurisdiction of this appeal from a collateral order pursuant to Pa.R.A.P. 313.

§ 1921(a). "The plain language of the statute is the best indicator of the legislature's intent. To ascertain the plain meaning, we consider the operative statutory language in context and give words and phrases their common and approved usage." *Chesapeake Energy Corp.*, *supra* at 942.

It is well-settled that evidentiary privileges are disfavored, and that their use should be permitted "only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *BouSamra v. Excela Health*, 210 A.3d 967, 975 (Pa. 2019) (cleaned up). Regarding the respective duties of the parties when a privilege is invoked, we have observed that "[t]he party invoking a privilege must initially set forth facts showing that the privilege has been properly invoked." *Yocabet v. UPMC Presbyterian*, 119 A.3d 1012, 1019 (Pa.Super. 2015) (cleaned up). "Once the invoking party has made the appropriate proffer, then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies." *Id*. (cleaned up).

At issue in the instant appeal is the Hospital's claim that the identity of the author of the anonymous report is privileged from discovery based upon the provisions of the Whistleblower Law incorporated by reference into the MCARE Act. The section of the MCARE Act invoked by the Hospital states as follows in relevant part:

**(a) Reporting.--**A health care worker who reasonably believes that a serious event or incident has occurred shall report the serious event or incident according to the patient safety plan of the medical facility unless the health care worker knows that a report has already been made. The report shall be made immediately or as soon thereafter as reasonably practicable, but in no event later than 24 hours after the occurrence or discovery of a serious event or incident.

. . . .

**(c) Liability.--**A health care worker who reports the occurrence of a serious event or incident in accordance with subsection (a) . . . shall not be subject to any retaliatory action for reporting the serious event or incident and shall have the protections and remedies set forth in [43 P.S. §§ 1421-1428], known as the Whistleblower Law.

**(d) Limitation.--**Nothing in this section shall limit a medical facility's ability to take appropriate disciplinary action against a health care worker for failure to meet defined performance expectations or to take corrective action against a licensee for unprofessional conduct, including making false reports or failure to report serious events under this chapter.

40 P.S. § 1303.308. Hence, the MCARE Act guarantees (1) freedom from retaliation for reporting, and (2) the protections and remedies offered by the Whistleblower Law.

The Whistleblower Law was designed "to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing." ***O'Rourke v. Commonwealth***, 778 A.2d 1194, 1202 (Pa. 2001) (cleaned up). The provisions of the Whistleblower Law concerning protection of employees are as follows:

**(a) Persons not to be discharged.--**No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

**(b) Discrimination prohibited.--**No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

**(c) Disclosure prohibition.--**An appropriate authority to which a violation of this act was reported may not disclose the identity of a whistleblower without the whistleblower's consent unless disclosure is unavoidable in the investigation of the alleged violation.

43 P.S. § 1423.

Upon examining the statutes, the trial court adopted the discovery master's conclusion that the Whistleblower Law's protections are "intended to discourage retaliation by the target of a whistleblower's report to an agency by restricting the agency's right to disclose the identity of the reporter; the law does not purport to preclude the target itself from ascertaining the reporter's identity by other means." Trial Court Opinion, 9/7/22, at 8 (quoting Discovery Master's Report and Recommendation, 7/18/22, at 11). The trial court further opined that it would be absurd to allow the target of a whistleblower to use the statute "as a shield against discovery of wrongdoing."

*Id*.   Therefore, the trial court directed the Hospital to conduct a reasonable review of the available data to determine who authored the anonymous report and provide the information to Plaintiff.

In challenging that ruling, the Hospital argues that the trial court erred in "skip[ping] past reviewing the statutory text" and basing its decision upon the legislative intent of the Whistleblower Law, and instead should have focused upon the intent of the MCARE Act.   *See* Hospital's brief at 10.   The Hospital further contends that the trial court's reading renders the MCARE Act's reference to the Whistleblower Law superfluous, as the MCARE Act itself protects reporters from retaliation by the Hospital.   *Id*. at 12.   Finally, the Hospital posits that the anonymity protections of the Whistleblower Law do not merely protect the employee from adverse actions by the employer, but also "ensures a whistleblower will not face collateral damage professionally and socially, will avoid retribution from the target's associates, and will escape attack from third-parties who are negatively impacted by the report."   *Id*. at 13.   Therefore, contending that the investigation in this case does not make the disclosure of the anonymous reported unavoidable, the Hospital maintains that it is precluded from disclosing the identity of the anonymous reporter absent that individual's consent.[3]   *Id*. at 9-10.

_____

[3] We note that the Hospital does not argue on appeal that the identity of the author of the anonymous report, or the report itself, is subject to any privilege other than the 40 P.S. § 1303.308.  Nor does it contend that compliance with
*(Footnote Continued Next Page)*

We first address the Hospital's assertion that "[t]he Whistleblower Law provides only that **the recipient** of the report, 'may not disclose the identity of the whistleblower." *Id*. at 11 (quoting a select portion of 43 P.S. § 1423(c)) (emphasis added). That is **not** what the Whistleblower Law states. We reiterate the actual text of the nondisclosure provision: "**An appropriate authority** to which a violation of this act was reported may not disclose the identity of a whistleblower without the whistleblower's consent unless disclosure is unavoidable in the investigation of the alleged violation." 43 P.S. § 1423(c) (emphasis added). While employers may not terminate or otherwise discriminate against an employee who made a good faith report to the employer **or** to an "appropriate authority,"[4] the anonymity provision of the law makes no reference to employers, constraining only the "appropriate authority" from disclosing the identity of the employee.

Therefore, we must determine whether the Hospital stands in the shoes of an "employer" or an "appropriate authority" for purposes of the Whistleblower Law's incorporation into the MCARE Act. We start with the statutory definitions. The word "employer" is defined by the Whistleblower

---

the trial court's order is unfeasible or unduly burdensome. Therefore, our review is limited to determining whether the trial court's order violates § 1303.308.

[4] If an employer engages in prohibited discrimination against a reporting employee, the remedies provision of the Whistleblower Law provides that the employee "may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both[.]" 43 P.S. § 1424(a).

Law thusly: "A public body or [an individual or entity] which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body[.]" 43 P.S. § 1422. The term "appropriate authority" is defined as follows:

> A Federal, State or local government body, agency or organization having jurisdiction over criminal law enforcement, regulatory violations, professional conduct or ethics, or waste; or a member, officer, agent, representative or supervisory employee of the body, agency or organization. The term includes, but is not limited to, the Office of Inspector General, the Office of Attorney General, the Department of the Auditor General, the Treasury Department, the General Assembly and committees of the General Assembly having the power and duty to investigate criminal law enforcement, regulatory violations, professional conduct or ethics, or waste.

43 P.S. § 1422. Our review of the pertinent provisions of the MCARE Act leads us to the ready conclusion that the Hospital is not an "appropriate authority" prohibited from disclosing the identity of the author of the anonymous report.

At the Hospital's suggestion, we begin with consideration of the purpose of the MCARE Act. That legislation was adopted to further the following policies: "to ensure that medical care is available in this Commonwealth through a comprehensive and high-quality health care system" and "to reduce and eliminate medical errors by identifying problems and implementing solutions that promote patient safety." 40 P.S. § 1303.102(1), (5). The patient safety chapter of the MCARE Act, 40 P.S. §§ 1303.301-1303.315, "relates to the reduction of medical errors for the purpose of ensuring patient safety." 40 P.S. § 1303.301.

- 10 -

In this vein, medical facilities are required to develop and implement patient safety plans that, *inter alia*, establish a system for its health care workers to report serious events[5] and incidents[6] to a patient safety officer who is tasked with ensuring the investigation of the reports and, in turn, reporting them to a patient safety committee. ***See*** 40 P.S. §§ 1303.307, 1303.309. The patient safety committee evaluates the patient safety officer's investigations, reviews and evaluates the quality of the medical facility's safety measures, and makes "recommendations to eliminate future serious events and incidents." 40 P.S. § 1303.310(b).

To oversee this system, our legislature established the Patient Safety Authority (referred to within the MCARE Act as "the authority"), an independent agency accountable to the Pennsylvania Department of Health ("the department"). ***See*** 40 P.S. §§ 1303.303, 1303.304. Medical facilities are obligated to promptly report the occurrence of serious events to both the authority and the department, while incidents are recounted only to the

---

[5] A serious event is "[a]n event, occurrence or situation involving the clinical care of a patient in a medical facility that results in death or compromises patient safety and results in an unanticipated injury requiring the delivery of additional health care services to the patient. The term does not include an incident." 40 P.S. § 1303.302.

[6] The definition of "incident" excludes serious events and states that it is "[a]n event, occurrence or situation involving the clinical care of a patient in a medical facility which could have injured the patient but did not either cause an unanticipated injury or require the delivery of additional health care services to the patient." 40 P.S. § 1303.302.

authority. *See* 40 P.S. § 1303.313(a), (b). The authority, *inter alia*, collects and analyzes the data, conducts independent reviews, advises facilities about changes to enhance patient safety, and provides an annual report to the General Assembly. *See* 40 P.S. § 1303.304(a), (c). Finally, the department reviews and approves patient safety plans, receives and investigates serious event reports, and approves recommendations issued by the authority. *See* 40 P.S. § 1303.306(a).

As discussed above, § 1303.308(a) mandates that health care workers report serious events and incidents according to the medical facility's patient safety plan. However, the MCARE Act additionally provides that "[a] health care worker who has complied with [§ 1303.]308(a) may file an anonymous report regarding a serious event with the authority." 40 P.S. § 1303.304(b). Thereafter,

> the authority shall give notice to the affected medical facility that a report has been filed. The authority shall conduct its own review of the report unless the medical facility has already commenced an investigation of the serious event. The medical facility shall provide the authority with the results of its investigation no later than 30 days after receiving notice pursuant to this subsection. If the authority is dissatisfied with the adequacy of the investigation conducted by the medical facility, the authority shall perform its own review of the serious event and may refer a medical facility and any involved licensee to the department for failure to report pursuant to [40 P.S. § 1303.]313(e) and (f).

*Id*.

Thus, the text of incorporated provisions of the Whistleblower Law in light of the reporting provisions of the MCARE Act makes it plain that the

- 12 -

Hospital does not stand in the shoes of an "appropriate authority" that is bound to protect the identity of a whistleblower. Rather, the "appropriate authorities" at issue are the public entities involved in administering the patient safety provisions of the Act, namely the Patient Safety Authority and the Department of Health. The Hospital instead stands in the shoes of the Whistleblower Law's concept of an "employer" for purposes of applying protections and remedies of the MCARE Act.[7]

We deem it no coincidence that the MCARE Act, as detailed above, contains no references to anonymous reporting in § 1303.308, which requires health care workers to make reports in accordance with the medical facility's patient safety plan, but does allow for anonymous reporting to the authority **after** the internal report is made. **See** 40 P.S. § 1303.304(b). Indeed, the MCARE Act on its face contemplates that medical facilities will be aware of who authored reports made pursuant to the patient safety plan insofar as it

---

[7] Before the MCARE Act was enacted in 2002, this Court held that both private medical institutions that receive money directly from the Commonwealth, and those that receive federal dollars through Medicaid, are employers for purposes of the Whistleblower Law. **See Riggio v. Burns**, 711 A.2d 497, 500 (Pa.Super. 1998) (*en banc*); **Denton v. Silver Stream Nursing & Rehab. Ctr.**, 739 A.2d 571, 573 (Pa.Super. 1999). However, reports of conduct that posed a risk to patient safety did not give rise to Whistleblower Law protections "unless a statute, regulation, or code of conduct or ethics is violated by the tortious act or omission." **Riggio**, **supra** at 502. Further, as the Hospital observes, many health care workers in any given medical facility are not employees of the facility. **See** Hospital's reply brief at 8. Thus, the MCARE Act extended protections to a broader class of whistleblowers for reporting a wider category of wrongdoing.

expressly provides that medical facilities are permitted to discipline and take corrective action against health care workers who make false reports. *See* 40 P.S. § 1303.308(a).

Moreover, our effectuation of the plain language of the statutes does not, as the Hospital suggests, violate the rules of statutory interpretation by rendering superfluous the MCARE Act's incorporation of the Whistleblower Law. The MCARE Act itself merely states generally that a worker who reports an incident or serious event pursuant to § 1303.308(a) "shall not be subject to any retaliatory action for reporting the serious event or incident[.]" 40 P.S. § 1303.308(b). Through the additional incorporation of the protections and remedies of the Whistleblower Law, workers are specifically: (1) protected from discharge and other adverse employment actions, with the right to bring civil actions against the employer for violations for those guarantees, pursuant to 43 P.S. §§ 1423(a) and (b) and 1424(a); and (2) protected from having their identities involuntarily disclosed by the authority or the department in connection with a public investigation of a report, unless disclosure is unavoidable, pursuant to 43 P.S. § 1423(c). Thus, the incorporation of the Whistleblower Law into § 1303.308 of the MCARE Act is manifestly meaningful without adopting the Hospital's position that it must keep the identity of the author of the anonymous report secret from Plaintiff.

In sum, we hold that 40 P.S. § 1303.308(b) and 43 P.S. § 1423(c) do not preclude the Hospital from taking reasonable efforts to ascertain and

disclose to Plaintiff the author of the anonymous report. Therefore, we have no cause to disturb the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/14/2023